Lester E. TEPE, individually and as personal representative of the Estate of Barbara H. Tepe, deceased (by substitution), Plaintiff–Appellee,

v.

ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICES d/b/a Blue Cross and Blue Shield of Colorado, Inc., Defendant–Appellant.

No. 93CA0584.

Colorado Court of Appeals, Div. III.

June 30, 1994.

Rehearing Denied Aug. 4, 1994.

Petition for Certiorari Dismissed on Stipulated Motion April 17, 1995.

Dufford & Brown, P.C., Morris B. Hecox, Jr., Scott J. Mikulecky, Denver, Arlene Groch, Somers Point, NJ, for plaintiff-appellee.

Cooper & Kelley, P.C., Richard B. Caschette, Dean A. McConnell, Denver, Miller &

Chevalier, Chartered, Terry Bancroft Dowd, Washington, DC, for defendant-appellant.

Opinion by Judge KAPELKE.

In this action for declaratory and injunctive relief, defendant, Blue Cross Blue Shield of Colorado, Inc. (BCBS), appeals from the summary judgment entered in favor of plaintiffs, Barbara and Lester Tepe. We affirm.

The following material facts are undisputed. Lester Tepe is a federal employee and a subscriber to the Federal Employees Health Benefits Program (the Program). The Program was established by Congress in the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. § 8901, et seq. (1988), to provide health benefits for federal employees and their families. The Program is administered by the United States Office of Personnel Management (OPM).

One of the plans under the Program is the Service Benefit Plan of Blue Cross and Blue Shield Association (the Association). Claims submitted by Colorado federal employees enrolled in the Association's Service Benefit Plan are administered by BCBS. Plaintiffs were enrolled in the 1993 Blue Cross and Blue Shield Service Benefit Plan (the Plan) and were also enrolled in predecessor plans administered by BCBS since the late 1980s.

In August 1992, Barbara Tepe was diagnosed as having breast cancer. She underwent a radical mastectomy in September 1992 and was thereafter treated with aggressive chemotherapy. In spite of this treatment, the cancer spread throughout her chest. Ms. Tepe's doctors recommended that she be treated with high dose chemotherapy supported by autologous bone marrow transplant (HDC/ABMT).

In February 1993, the University of Colorado Health Services Center sought prior approval under the Plan for benefits for Ms. Tepe for HDC/ABMT treatment of her cancer. Defendant denied plaintiffs' request for prior approval on the basis that HDC/ABMT treatment for breast cancer is not covered by the Plan.

BCBS initiated the FEHBA appeal process by sending plaintiffs' request to the Association for reconsideration. The Associ-

ation upheld BCBS' decision denying coverage and submitted the claim to OPM for review. OPM affirmed the denial of benefits on the ground that HDC/ABMT treatment for breast cancer is not covered under the Plan.

Plaintiffs filed this action in the trial court, and defendant removed the case to the United States District Court for the District of Colorado. That court concluded that it lacked subject matter jurisdiction and therefore remanded the matter to the trial court.

On cross-motions for summary judgment, the trial court, applying Colorado law, held that plaintiffs were entitled to coverage under the Plan for HDC/ABMT treatment for Ms. Tepe's breast cancer. Accordingly, the trial court granted plaintiffs' motion for summary judgment.

During the pendency of this appeal, Ms. Tepe died. Mr. Tepe, as personal representative of the estate of Ms. Tepe, has been substituted as an appellee.

## I.

■ Defendant first contends that the trial court erred in applying state law rather than federal law. More specifically, defendant contends that plaintiffs' state law claims are preempted by FEHBA and that federal law must be applied here because plaintiffs' claims involve insurance coverage under an FEHBA plan. We disagree.

This contention was rejected in *Howard v. Group Hospital Service,* 739 F.2d 1508 (10th Cir.1984). For the reasons expressed in that opinion, we also reject the contention. *See also Rocky Mountain Hospital & Medical Service v. Phillips,* 835 F.Supp. 575 (D.Colo. 1993). We similarly reject defendant's contention that *Howard* was implicitly overruled by the United States Supreme Court's decision in *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). *See Rocky Mountain Hospital & Medical Service v. Phillips, supra.*

We recognize that since the *Howard* decision, virtually every other federal court that has considered the question has concluded that state law is preempted by FEHBA and that federal law therefore applies to disputes arising under FEHBA plans. *See Caudill v. Blue Cross & Blue Shield,* 999 F.2d 74 (4th Cir.1993); *Hayes v. Prudential Insurance Co.,* 819 F.2d 921 (9th Cir.1987), *cert. denied,* 484 U.S. 1060, 108 S.Ct. 1014, 98 L.Ed.2d 980 (1988); *Tackitt v. Prudential Insurance Co.,* 758 F.2d 1572 (11th Cir.1985). However, in the absence of a Supreme Court decision resolving the split in the circuits on this issue, we, like the United States District Court for the District of Colorado, elect to follow *Howard* and apply state common law here. *See Rocky Mountain Hospital & Medical Service v. Phillips, supra.*

We are also led to apply state law in this case by the fact that, in remanding this case to the state court following removal, the United States District Court expressly rejected defendant's argument and found that it did not have federal question jurisdiction and that state law governed plaintiffs' claims.

## II.

■ Defendant next contends that the trial court erred in considering the claims on a *de novo* basis rather than restricting itself to a limited review of the OPM decision pursuant to an "arbitrary and capricious" standard. Again, we disagree.

Under the implementing regulations for the Program, a carrier such as BCBS initially determines whether a claim is covered under its insurance policy. 5 C.F.R. § 890.105(b) (1993). If the carrier denies a claim, the claimant may make a written request to OPM for "a review to determine whether the plan's denial is in accord with the terms of OPM's contract with the carrier of the plan." 5 C.F.R. § 890.106(c) (1993). If OPM determines that the denial of benefits was improper, it may require the carrier to pay the requested benefits. 5 U.S.C. § 8902(j) (1993). This review procedure is designed to permit OPM to resolve conflicts between itself and the carriers over interpretation of the carriers' plans. *Howard v. Group Hospital Service, supra.*

■ The OPM review procedure is optional, however, and is not a prerequisite to commencing a legal action. *See Eidler v. Blue Cross Blue Shield United,* 671 F.Supp.

1213 (E.D.Wis.1987); *Skoller v. Blue Cross & Blue Shield*, 584 F.Supp. 288 (S.D.N.Y.1984); *but see Kobleur v. Group Hospitalization & Medical Services*, 954 F.2d 705 (11th Cir. 1992).

■ The regulations specifically provide that "OPM does not adjudicate individual claims for payment or service under health benefit plans." 5 C.F.R. § 890.105(a) (1993). Similarly, under 5 C.F.R. § 890.107 (1993):

> An action to recover on a claim for health benefits should be brought against the carrier of the health benefits plan. An action to review the legality of OPM's regulations under this part or of a decision made by OPM should be brought against [OPM]. However, an enrollee's dispute of an OPM decision solely because it concurs in a health plan carrier's denial of a claim is not a challenge to the legality of OPM's decision. Therefore, any subsequent litigation to recover on the claim should be brought against the carrier, not OPM.

This section contemplates that "claims for recovery under the plans should not involve the federal government, but should be individual actions against the health benefit carrier." *Howard v. Group Hospital Service, supra,* 739 F.2d at 1511.

This case does not involve a challenge to the legality of OPM's regulations or a review of an OPM decision other than a decision concurring with a carrier's denial of a claim. Accordingly, plaintiffs' claims were properly asserted against the carrier, not OPM, and the trial court correctly determined that it is the propriety of the carrier's decision, not OPM's affirmance of that decision, that is at issue.

We therefore reject defendant's contention that the trial court erred in not applying a limited "arbitrary and capricious" standard of review. *See Eidler v. Blue Cross Blue Shield United, supra.*

■ Defendant also contends that OPM was an indispensable party whose joinder was required. We disagree.

This is an action between the plaintiffs as insureds and BCBS as a private carrier. Significantly, defendant acknowledges that, by OPM's own regulations, OPM is not a necessary party to litigation relating to its adjudication of claims disputes. *See* 5 C.F.R. § 890.107 (1993). Under these circumstances, we perceive no sound basis for concluding that OPM was even a necessary, let alone indispensable, party.

### III.

■ With respect to the merits of the insurance coverage dispute, defendant contends that the trial court erred in concluding that plaintiffs were entitled to coverage under the 1993 Plan for HDC/ABMT treatment for Ms. Tepe's breast cancer. Again, we disagree.

At the outset, we note that summary judgment is a drastic remedy and should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Roberts v. Holland & Hart,* 857 P.2d 492 (Colo.App.1993).

■ Ambiguous language in an insurance policy must be construed in favor of the insured and against the insurer who drafted the policy. Terms used in an insurance contract are ambiguous when they are susceptible to more than one reasonable interpretation. *Hecla Mining Co. v. New Hampshire Insurance Co.,* 811 P.2d 1083 (Colo.1991).

■ The determination of the existence of an ambiguity in a contract is a question of law for the trial court. In making that determination, the trial court must examine the insurance policy as a whole. *Farmers Insurance Co. v. Plunkett,* 687 P.2d 470 (Colo.App. 1984).

■ Coverage provisions in an insurance contract are to be liberally construed in favor of the insured to provide the "broadest possible coverage." *Jarnagin v. Banker's Life & Casualty Co.,* 824 P.2d 11, 14 (Colo. App.1991); *see also Beeson v. State Automobile & Casualty Underwriters,* 32 Colo.App. 62, 508 P.2d 402 (1973), *aff'd,* 183 Colo. 284, 516 P.2d 623 (1973). Thus, when an insurer seeks to restrict coverage, the limitation must be clearly expressed.

■ In the absence of such a clear expression of limitation, or if the policy provisions are inconsistent or ambiguous, the insurance contract must be construed in favor of coverage and against limitations. *State Farm Mutual Automobile Insurance Co. v. Nissen,* 851 P.2d 165 (Colo.1993); *Lister v. American United Life Insurance Co.,* 797 P.2d 832 (Colo.App.1990).

■ Exclusionary language that conflicts with the objectively reasonable expectations of the insured is not enforceable, even if a "painstaking study of the policy provisions would have negated those expectations." *State Farm Mutual Auto Insurance Co. v. Nissen, supra,* 851 P.2d at 168; *see also Leland v. Travelers Indemnity Co.,* 712 P.2d 1060 (Colo.App.1985).

■ In addition, an insurer who fails to notify the insured of limitations regarding coverage may be precluded from relying on the existence of such limitations to avoid liability. *Jarnagin v. Banker's Life & Casualty Co., supra; Leland v. Travelers Indemnity Co., supra.* This is especially true with respect to renewal policies, such as plaintiffs' contract with BCBS.

■ It is "a long-standing general principle applicable to insurance policies that an insurance company is bound by a greater coverage in an earlier policy when a renewal policy is issued but the insured is not notified of the specific reduction in coverage." *Davis v. United Services Automobile Ass'n,* 223 Cal.App.3d 1322, 273 Cal.Rptr. 224, 230 (Ct. 1990); *see also Government Employees Insurance Co. v. United States,* 400 F.2d 172 (10th Cir.1968); *Noyes Supervision, Inc. v. Canadian Indemnity Co.,* 487 F.Supp. 433 (D.Colo.1980).

Plaintiffs were subscribers to the 1990 policy administered by BCBS. That policy provided for coverage for bone marrow transplant procedures. Under the heading "Surgical Medical Benefits," the policy indicated that coverage would be provided for:

> Surgical transplants for the following human organ transplant procedures: kidney, bone marrow, cornea, heart, liver, pancreas, and heart and lung.

In addition, the 1990 policy provided coverage for chemotherapy procedures. Based on these provisions in the insurance contract, the trial court concluded that HDC/ABMT treatment for breast cancer was covered under the 1990 plan.

Benefits were excluded under the 1990 plan for "services and supplies ... which are investigative, mainly for research purposes or experimental in nature." While the 1990 plan contained no exclusion referring specifically to HDC/ABMT treatment, defendant claims that there was no coverage for that treatment by reason of this "experimental exclusion." We reject this contention.

The majority of courts that have considered the propriety of an insurer's denial of coverage for HDC/ABMT treatment for breast cancer have concluded that the treatment is not experimental and that benefits relating to that treatment may not be denied based on policy exclusions for experimental or investigative treatments. *See Kekis v. Blue Cross & Blue Shield,* 815 F.Supp. 571 (N.D.N.Y.1993); *Adams v. Blue Cross/Blue Shield,* 757 F.Supp. 661 (D.Md.1991); *Kulakowski v. Rochester Hospital Service Corp.,* 779 F.Supp. 710 (W.D.N.Y.1991); *Pirozzi v. Blue Cross–Blue Shield,* 741 F.Supp. 586 (E.D.Va.1990). *But see Nesseim v. Mail Handlers Benefit Plan,* 995 F.2d 804 (8th Cir.1993); *and Harris v. Mutual of Omaha Co.,* 992 F.2d 706 (7th Cir.1993) in which the courts, applying the "arbitrary and capricious" standard, upheld OPM decisions of non-coverage based on the experimental exclusion.

The trial court did not err in concluding that the 1990 plan afforded coverage for HDC/ABMT treatment.

Plaintiffs renewed their insurance contracts with BCBS in 1991 and 1992. The BCBS plans for 1991 and 1992, like the 1990 plan, provided benefits for chemotherapy and bone marrow transplants. Unlike the 1990 plan, however, the 1991 and 1992 plans provided that bone marrow transplant procedures would be covered only for specifically listed diseases. Breast cancer was not one of the listed diseases.

Both the 1991 and 1992 BCBS plans contained sections labeled, in enlarged bold

typeface, "How the Plan Changes." Those sections advised the reader to read the entire plan brochure because the language in the brochures, including the language regarding coverage for organ transplants, had been "clarified" or "modified." The "How the Plan Changes" sections also expressly indicated that: "Changes in the language used in this brochure are not intended to change any benefit unless described as Benefit Changes above."

The 1991 plan brochure listed eight "benefit changes," but the change in coverage for bone marrow transplants was not among the changes listed. Similarly, the 1992 plan brochure listed six "benefit changes," which did not include the change in coverage for bone marrow transplants.

The 48–page 1993 BCBS plan brochure contained provisions similar to those contained in the 1991 and 1992 plans, but added language specifically excluding coverage for bone marrow transplant and related chemotherapy procedures for the treatment of breast cancer. Specifically, under the section "Surgical–Medical benefits," the 1993 Plan indicated that benefits were not provided for:

> Services or supplies for or related to surgical transplant procedures for artificial or human organ/tissue transplants not listed as specifically covered such as breast cancer.... Related services or supplies include administration of high dose chemotherapy when supported by transplant procedures.

However, while the insurer, in the "How the Plan Changes" section in the 1993 plan, listed eighteen specific benefit changes, it once again failed to identify the exclusion of HDC/ABMT treatment for breast cancer as one of the changes. Under a section entitled "Clarifications," the 1993 plan brochure, like the brochures in previous years, advised the insured to read the entire plan but reassured the reader that: "Unless indicated above as a benefit change, the brochure revisions do not affect the benefits available under this Plan."

In addition to finding that HDC/ABMT was a covered service for breast cancer under the 1990 plan, the trial court found that BCBS had not provided adequate notice to plaintiffs as enrollees of that plan that there had been a change in benefits available for HDC/ABMT treatment under the plans administered by BCBS in 1991 through 1993. The court determined that, because the "How the Plan Changes" sections did not indicate that there had been a change in the coverage available for HDC/ABMT treatment for breast cancer, the 1993 Plan was ambiguous with respect to coverage for that treatment, notwithstanding the specific exclusionary language. Accordingly, the trial court concluded that the exclusion in the 1993 Plan for HDC/ABMT treatment for breast cancer could not be applied to plaintiffs. We agree with the trial court's conclusions.

In *Giles v. St. Paul Fire & Marine Insurance Co.*, 405 F.Supp. 719 (N.D.Ala.1975), the insured was a law firm that carried its professional liability insurance with the defendant insurer. The insurer sent the insured a letter and an endorsement stating that the policy excluded liability for all securities work. The agent who delivered the policy to the insured advised the insured that the policy contained an exclusion for liability for acts committed in knowing violation of SEC rules. He did not, however, point out the separate exclusion in the endorsement of liability for *all* securities work, which subsumed the other exclusion. The policy included a "Major Changes Statement," but this summary of changes did not mention the exclusion contained in the letter and the endorsement.

The court found that the "Major Changes Statement," which purported to describe all the changes contained in the policy:

> created an ambiguity between it and the [endorsement].... Placing both provisions in the policy could have created such confusion as to the scope of coverage that the plaintiff ... easily might have been misled and caused to rely upon the "Major Changes Statement" as a correct statement of the securities law risks for which [the insurer] would or would not provide coverage. At a minimum, the presence of both exclusions created a very real ambiguity, in that one purported to reflect all major changes in the policy, while the oth-

er contained a major change to which the first made absolutely no reference. *Giles v. St. Paul Fire & Marine Insurance Co., supra*, 405 F.Supp. at 726.

Thus, the court held that the insured was not adequately informed of the change in coverage and that he should have the benefit of the greater coverage provided in the original policy. *See also Davis v. United Services Automobile Ass'n, supra* (changes contained in "Clarification of Coverage" section, but not indicated in other portions of the insurance contract which purported to describe benefit changes, rendered policy ambiguous and changes unenforceable).

In *Fields v. Blue Shield*, 163 Cal.App.3d 570, 209 Cal.Rptr. 781 (Ct.1985), the subscriber sued Blue Shield because of its refusal to pay for psychoanalysis under an FEHBA plan. When the insured enrolled in the plan in 1975, psychoanalysis was covered up to a lifetime maximum of $50,000. For the plan year 1976, the subscriber received a plan brochure which the reader was advised to read in its entirety because "clarifications" were included throughout the plan. The 1976 plan contained an exclusion for psychoanalysis if the insured received credit for psychoanalysis as part of an educational program. The exclusion, however, was not referred to in the section entitled "How Plan Changes," or included under the section entitled "Exclusions." Instead, it was placed at the end of the benefit granting provisions.

The court in *Fields* found that the insurer did not notify the subscriber "by a clear, conspicuous notice in an expected place that coverage he originally had was now totally withdrawn." *Fields v. Blue Shield, supra*, 209 Cal.Rptr. at 786. Thus, the court concluded that the insurer was bound by the coverage provided in the previous plan.

Here, as in *Giles* and *Fields*, BCBS did not adequately notify its renewing subscribers that the plan had been changed to exclude coverage for the HDC/ABMT treatment for breast cancer. *Cf. Wilson v. Group Hospitalization & Medical Services, Inc.*, 791 F.Supp. 309 (D.D.C.1992) (insurer's amendment to policy to exclude coverage for transplants except autologous bone marrow transplants for five specifically identified diseases did not adequately inform insured that HDC/ABMT for the treatment of breast cancer was excluded). The "How the Plan Changes" sections, which purported to list all changes in the plan coverage, conflicted with the provisions in the 1991 through 1993 plans purporting to exclude coverage for the treatment for breast cancer.

"When provisions in an insurance policy conflict, they are to be construed against the insurer and in favor of coverage to the insured." *State Farm Mutual Automobile Insurance Co. v. Nissen, supra*, 851 P.2d at 166. Thus, the conflict in policy provisions here must be construed against BCBS.

Moreover, based on the 1990 plan, plaintiffs had an objectively reasonable expectation that HDC/ABMT treatment for breast cancer was covered under the plan, and the conflicting provisions in the 1991 through 1993 plans could have created confusion about the scope of coverage available. *See State Farm Mutual Automobile Insurance Co. v. Nissen, supra; Leland v. Travelers Indemnity Co., supra*.

Contrary to defendant's assertion, *Goepel v. Mail Handlers Benefit Plan*, Civ. A. No. 93–3711, 1993 WL 384498 (D.N.J. Sept. 24, 1993), does not support the argument that the 1990 Plan excluded benefits for HDC/ABMT treatment for breast cancer and that the language in the 1991 through 1993 plans merely clarified the provisions in the 1990 Plan.

The plaintiffs in *Goepel* sought to compel the carrier of the Mail Handlers Benefit Plan (MHBP), a plan administered pursuant to FEHBA, to pay for HDC/ABMT treatment for breast cancer. The 1990 MHBP plan brochure indicated that bone marrow transplants were covered only in cases involving leukemia. The brochure did not discuss the availability of coverage for high dose chemotherapy supported by autologous bone marrow transplant. The 1991 and 1992 MHBP plan brochures clarified the carrier's policy with respect to bone marrow transplants by limiting autologous bone marrow transplants to specified medical conditions, which did not include breast cancer. The 1991 brochure alerted enrollees to the clarification in the

"How the Plan Changes" section. Because the carrier continued to receive requests for benefits for HDC/ABMT treatment for breast cancer, however, it included language in the 1993 plan that mirrored the exclusionary language contained in the 1993 BCBS plan here.

The plaintiffs in *Goepel* argued that the clarification of the provisions regarding coverage for bone marrow transplants in 1991 was in fact a change in benefits, of which plaintiffs were not given proper notice. The court disagreed and held that the coverage available for HDC/ABMT treatment for breast cancer had not changed between 1990 and 1993 and that the clarifications adequately notified enrollees of the revisions in the text of the plan brochures.

Unlike the 1990 plan at issue in *Goepel,* the 1990 BCBS plan here did not specifically indicate that benefits were available for bone marrow transplants only in cases involving leukemia. Rather, the 1990 BCBS plan provided that bone marrow transplants were covered without limitation. Thus, although the exclusionary language in the 1991 through 1993 MHBP plan brochures at issue in *Goepel* was very similar to the provisions in the 1991 through 1993 BCBS plans, that language merely *clarified* the existing limitations in the Mail Handlers' plan. Here, however, the trial court correctly concluded that the language actually *changed* the benefits available under the BCBS plan.

Under the circumstances here, we conclude that the trial court did not err in determining that plaintiffs were entitled to benefits under the 1993 Plan for HDC/ABMT treatment for Ms. Tepe's breast cancer.

The judgment is affirmed.

PLANK and JONES, JJ., concur.