COLONIAL INSURANCE COMPANY OF CALIFORNIA, Plaintiff–Appellee,

v.

AMERICAN HARDWARE MUTUAL INSURANCE COMPANY, Defendant–Appellant.

No. 97CA1613.

Colorado Court of Appeals, Div.III.

Nov. 13, 1998.

Tilly & Graves, P.C., Amy L. Miletich, Mark E. Nolan, Denver, Colorado, for Plaintiff–Appellee.

James R. Florey, Jr., Englewood, Colorado, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, American Hardware Mutual Insurance Company (American), appeals from the summary judgment entered in favor of plaintiff, Colonial Insurance Company of California (Colonial), determining that American is the primary insurer for an automobile accident. We affirm.

The facts of this case are undisputed. On November 13, 1994, Joshua Papp was driving a truck owned by his employer, Dave Taylor Ford, Inc. (dealership), when it collided with a second vehicle, causing injury to Papp's passenger and the subsequent death of the other driver. At the time of the accident, Papp was acting outside of the course of his employee duties with the dealership.

The dealership was the named insured under a liability policy issued by American which covered the truck Papp was driving. Papp was the named insured under a liability policy issued by Colonial.

Claiming that Papp was not an insured according to the terms of its insurance contract with the dealership, American denied coverage under its policy and refused to defend Papp in a suit brought against him by his passenger and the estate of the other driver. Subsequently, Colonial defended Papp in these actions and then filed a declaratory judgment action against American, seeking reimbursement of liability payments paid to the estate of the second driver and to

Papp's passenger, personal injury protection (PIP) payments paid to Papp and his passenger, and defense costs and attorney fees. American counterclaimed, seeking reimbursement for defense costs, including attorney fees, and for a liability payment it made after Colonial's policy was exhausted.

Upon cross-motions for summary judgment, the trial court granted Colonial's motion, finding, under the circumstances at issue, that American's policy had, indeed, provided for primary coverage. The court ordered American to reimburse Colonial for PIP payments and indemnity payments made to Papp, his passenger, and the estate of the second driver, and for attorney fees and costs incurred in defense of the claims against Papp.

I.

American first contends that the trial court erred in entering judgment because Papp does not qualify as an "insured" under the policy it issued to the dealership because Papp was not acting within the course and scope of his employment at the time of the accident and, therefore, was not an "employee" of the dealership at the time of the accident. The unambiguous language of the policy, however, reveals that this contention is not persuasive.

The interpretation of a contract for insurance is an issue of law that may be reviewed de novo. As with any contract, we first look to the language of the policy to ascertain the intent of the parties. *See State Farm Mutual Automobile Insurance Co. v. Stein,* 940 P.2d 384 (Colo.1997).

The contract should be construed as it would be understood by persons of ordinary intelligence. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992). Thus, strained interpretations should be avoided and words should be given their plain meanings according to common usage. *Compton v. State Farm Mutual Automobile Insurance Co.,* 870 P.2d 545 (Colo.App.1993).

Furthermore, provisions seeking to limit coverage must be clearly expressed, and, therefore, in the absence of a clear expression of limitation, the insurance contract must be construed in favor of coverage. *Tepe v. Rocky Mountain Hospital & Medical Services,* 893 P.2d 1323 (Colo.App.1994).

Here, the pertinent provision in the policy issued by American to the dealership provides:

> We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'

The policy defines an "insured" under this section as the named insured and "*[a]nyone* else while using with your permission a covered 'auto' you own." (emphasis added)

The plain language of this provision requires American to provide coverage to any person permissively operating a vehicle owned by the dealership. While there are exceptions to this general requirement which are not factually relevant here, there is no language in the policy which expresses an intent that "anyone" should be limited to employees acting within the course and scope of their employment. In the absence of any such language, we construe the provision in favor of coverage by interpreting the provision according to the plain meaning of its terms. *See Tepe v. Rocky Mountain Hospital & Medical Services, supra.*

Thus, under the present factual context, Papp falls within the ambit of American's coverage because, with its permission, he was driving a truck owned by the dealership.

II.

In the alternative, American contends that, even if it is required to provide coverage to Papp, the trial court erred in finding that its coverage is primary. American supports this contention on two grounds by arguing that the language in both its policy and §10–4–707(4), C.R.S.1998, establishes that Colonial is the primary insurer. We disagree with both arguments.

## A.

■ We reject American's argument that it is not the primary insurer under the terms of the policy it issued to the dealership.

With respect to American's responsibility for liability coverage, the pertinent provision of American's policy provides:

*For any covered 'auto' you own, this Coverage Form provides primary insurance.* For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. (emphasis supplied)

We conclude that the unambiguous language of this provision requires American to provide primary liability coverage for any accident involving a vehicle owned by the named insured. As the accident here involved a truck owned by the dealership, pursuant to this provision American is required to provide primary liability coverage.

■ Furthermore, with respect to coverage for PIP benefits, the unambiguous language of the policy establishes that American must also provide primary coverage. The relevant provision states, in pertinent part:

2. This insurance is primary for 'bodily injury' sustained by an 'insured' in an 'accident' arising out of the use or operation of the covered 'auto.'

3. This insurance is excess if the 'accident':

a. Arises out of the operation of the covered 'auto' by someone other than the owner of such vehicle or an employee of the owner.

American again invites us to construe the term "employee," as used in the statute, and to be applied in the subject policy, to mean one who is acting within the course and scope of his or her employment. Under such a construction, American argues that this case fall within section 3(a) because Papp was on a social excursion at the time of the accident and, therefore, he should be considered as "someone other than . . . an employee of the owner." We decline American's invitation.

We disagree with American's construction of the word "employee" because it fails to reflect the ordinary meaning of the word as it is understood by persons generally. In its ordinary use, the word "employee" signifies one who renders labor or services to another for salary or wages. *See Black's Law Dictionary* 525 (6th ed.1990). See also *People v. Coleman,* 844 P.2d 1215 (Colo.App.1992)(defining the term "employee" as used in §16–10–103(1)(k), C.R.S.1998, as someone who agrees to perform services and to accept direction and control from another in consideration for compensation); *Industrial Risk Insurers v. New Orleans Public Service, Inc.,* 666 F.Supp. 874 (E.D.La.1987)(defining the term "employee" as used in an insurance contract as one who works for salary or wages); *Petronzio v. Brayda,* 138 N.J.Super. 70, 350 A.2d 256 (1975)(defining the term "employee" as used in an insurance contract as one who works for salary or wages and is subject to the employer's direction and control).

By seeking to require that one must be acting in the course and scope of his or her employment to qualify as an employee, American's construction extends beyond the plain meaning of the word. Other provisions of American's policy indicate that, had American intended to include such a limitation, it could easily have included express language to that effect. For example, American restricted the definition of "insured" as used in the section pertaining to non-covered autos by defining the word as "[y]our partners, employees, directors, or shareholders *but only while acting within the scope of their duties."* (emphasis supplied)

Because American failed to include any similar language in the provisions concerning PIP coverage and multiple insurers, we do not construe the provision as including such a restriction but, rather, interpret the provision in favor of coverage. *See Tepe v. Rocky Mountain Hospital & Medical Services, supra.*

Thus, the express terms of its policy require American to be the primary carrier for Papp's accident.

## B.

■ Our rejection of American's strained construction of the word "employee" as used

in its policy also compels us to reject its argument that §10–4–707(4), C.R.S.1998, requires Colonial to provide primary insurance coverage.

Section 10–4–707(4), C.R.S.1998, provides, in pertinent part, as follows:

When an accident involves the operation of a motor vehicle by a person who is neither the owner of the motor vehicle involved in the accident *nor an employee of the owner,* and the operator of the motor vehicle is an insured under a complying policy other than the complying policy insuring the motor vehicle involved in the accident, primary coverage as to all coverages provided in the policy under which the operator is an insured shall be afforded by the policy insuring the said operator ... any policy under which the owner is an insured shall afford excess coverage. (emphasis supplied)

American urges us to find that the statute is applicable, under the facts of this case, because the word "employee" should be construed as one who is acting within the course and scope of his or her employment. Again, we decline to adopt this construction because, as is the case with the policy, there is no language in the statute expressing an intent to limit the meaning of the word employee in that manner and American's proposed construction does not comport with the plain meaning of the word in the context in which it appears in the statute. Accordingly, we reject American's argument and find that the statute cannot be interpreted here in a way such as to relieve American of its contractual duties to provide primary coverage.

### III.

American also contends, alternatively, that, pursuant to *Allstate Insurance Co. v. Avis Rent–A–Car System, Inc.,* 947 P.2d 341 (Colo.1997), there should be a pro rata apportionment of primary coverage between it and Colonial. We disagree.

In *Allstate,* our supreme court determined that conflicting excess insurance clauses were mutually repugnant because the enforcement of both provisions denied coverage altogether to the victims of the automobile accident.

Unlike the policies involved in *Allstate,* however, there is no conflict between the applicable clauses of the insurance policies here.

To the contrary, as illustrated previously, the policy issued by American to the dealership expressly provides primary insurance for any covered auto that the dealership owns and, in the case of PIP benefits, that was driven by an employee of the dealership. In contrast, coverage under the Colonial policy, by its terms, is excess where, as here, the insured is driving a non-owned vehicle that has other insurance coverage on it.

The pertinent portions of Colonial's policy issued to Papp provide:

(2) LIABILITY COVERAGE AVAILABLE FROM OTHER SOURCES

Subject to [an item not relevant here] if there is other similar insurance that also applies to an accident covered by this Part, we will pay only that portion of the amount that our limit of liability bears to the total limits of all similar insurance. *But this insurance is excess over any other insurance when you occupy or use any car not owned by you.*

. . . .

That insurance afforded by the policy for bodily injury and property damage liability shall be excess insurance over any other valid and collectible insurance available to you under any other policy and shall be excess insurance over the amount that a self-insured had agreed to pay under any safety responsibility law, financial responsibility law, or other law of any state or municipality. (emphasis added)

Accordingly, as the provisions of the American policy and the Colonial policy are not mutually repugnant, there is no need to apportion the liability coverage. *See Finizio v. American Hardware Mutual Insurance Co.,* 967 P.2d 188 (Colo.App.1998).

### IV.

Finally, American argues that the trial court erred in holding it responsible for the fees and costs of Papp, paid by Colonial in defending the actions brought against him. We disagree.

■ Our supreme court has determined that in cases in which a liability insurer voluntarily pays more than its share of loss in the defense of an insured, the insurer is entitled to demand contribution of its defense costs and settlement payment from a second insurer. The underlying policy behind this rule is to prevent an insurer from being rewarded for refusing to honor its contractual obligations by failing to defend a lawsuit brought against the insured that falls within the terms of its policy. *National Casualty Co. v. Great Southwest Fire Insurance Co.*, 833 P.2d 741 (Colo.1992). *Se*e also *Finizio v. American Hardware Mutual Insurance Co., supra*; 8A J. Appleman, *Insurance Law & Practice* §4921 at 538 (1981).

■ Here, by the terms of its policy issued to the dealership, American had "the right and duty to defend any 'suit' " asking for damages covered by the policy. However, despite its obligation under the policy, American refused to assume the duties which were primarily placed on it, causing Colonial to incur attorney fees and costs in defending the claims brought against Papp. Thus, the trial court properly determined that Colonial, as the excess insurer, is entitled to seek reimbursement of these costs from American since the settlement amount was within the limits of the policy issued to the dealership.

The judgment is affirmed.

NEY and RULAND, JJ., concur.