**CITY OF ARVADA, Plaintiff–Appellant,**

v.

**COLORADO INTERGOVERNMENTAL RISK SHARING AGENCY,**
**Defendant–Appellee.**

**No. 97CA1829.**

Colorado Court of Appeals,
Div. V.

April 15, 1999.

Certiorari Granted Nov. 8, 1999.

Roberts & Zboyan, P.C., Thomas L. Roberts, Larry Curtis Smith, Denver, Colorado, for Plaintiff–Appellant.

Senter, Goldfarb & Rice, L.L.C., Thomas S. Rice, Peter H. Doherty, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge VOGT.

In this action for breach of an insurance contract, plaintiff, City of Arvada (Arvada), appeals the summary judgment entered in favor of defendant, Colorado Intergovernmental Risk Sharing Agency (CIRSA). We affirm.

CIRSA is a public entity self-insurance pool that provides claims services to its member municipalities. At all times relevant to this action, CIRSA and its members, including Arvada, were named insureds under a Lloyd's of London insurance policy which provided comprehensive general liability (CGL) and errors and omissions liability (E & O) coverage.

In November 1993, Arvada was sued by a tenant in its cultural center. The tenant asserted claims for breach of contract, injunctive relief, interference with prospective contractual relations, misappropriation of business opportunity, and bad faith, all arising out of Arvada's asserted breach of provisions in the parties' lease agreement which gave the tenant the exclusive right to provide catering services at the center.

Arvada tendered the complaint to CIRSA, seeking defense and indemnification, but CIRSA advised it that there was no coverage for the suit under the Lloyd's policy. Arvada and the tenant subsequently agreed to try the case solely on the issue of damages available under the lease termination clause. After a trial, the district court entered judgment in favor of the tenant for $387,220.10 and later amended the judgment to include the tenant's attorney fees.

Arvada then filed this action against CIRSA for breach of insurance contract, seeking the amounts it had paid in satisfaction of the underlying judgment as well as its defense costs. Both parties moved for summary judgment. The trial court concluded that there was no coverage for the underlying action under the Lloyd's policy. Accordingly, it granted CIRSA's motion for summary judgment and denied Arvada's cross-motion.

I.

Arvada contends that the trial court erred in concluding that it was not entitled to coverage under the CGL section of the Lloyd's policy. We disagree.

■ A trial court's interpretation of an insurance contract is a matter of law which the appellate court reviews *de novo*. *Bohrer v. Church Mutual Insurance Co.*, 965 P.2d 1258 (Colo.1998).

■ An insurance policy must be enforced as written unless there is ambiguity in the policy language. *State Farm Mutual Automobile Insurance Co. v. Stein*, 940 P.2d 384 (Colo.1997). Courts are not to rewrite or limit unambiguous policy provisions by a strained construction, *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co.*, 874 P.2d 1049 (Colo.1994), or force an ambiguity in order to resolve it against an insurer. An insurer cannot be held liable beyond the scope of risks which have been clearly covered in the insurance policy.

*Kane v. Royal Insurance Co.*, 768 P.2d 678 (Colo.1989).

■ An insurer's duty to defend arises when the underlying complaint alleges facts that might fall within the policy's coverage. *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo.1991). If there is no duty to defend, there is no duty to indemnify. *TerraMatrix, Inc. v. United States Fire Insurance Co.*, 939 P.2d 483 (Colo.App.1997).

Here, the CGL section of the policy provided coverage for claims made against the insured on account of personal injury or property damage. "Personal Injury" was defined as:

> Bodily Injury, Mental Anguish, Shock, Sickness, Disease, Disability, Wrongful Eviction, Malicious Prosecution, Discrimination, Humiliation, Invasion of Rights of Privacy, Libel, Slander or Defamation of Character; also Piracy and any Infringement of Copyright or of Property, Erroneous Service of Civil Papers, Assault and Battery and Disparagement of Property. . . .

"Property damage" was defined as "damage to or loss or destruction of tangible property."

Arvada argued that the underlying complaint asserted a claim for "personal injury" because it sought recovery for "infringement of . . . property," a phrase included in the definition of personal injury. It also argued that the inconsistency between the definition of personal injury, which covered intentional acts, and the policy's exclusion of coverage for expected or intended damages rendered its coverage illusory unless the exclusion were declared void.

The trial court did not reach the latter argument because it found that Arvada had not made the requisite threshold showing that the underlying complaint alleged personal injury or property damage. It found Arvada's "infringement of property" argument to be "supported by no controlling caselaw and . . . strained beyond credibility." Citing *Black's Law Dictionary* definitions of piracy (the "illegal reproduction or distribution of copyrighted material as well as property pro-tected by patent or trademark laws") and infringement (a term "used especially of the rights secured by patents, copyrights, and trademarks"), the court concluded that, when taken in context, the phrase "piracy and any infringement of copyright or of property" was not reasonably susceptible of a construction that would include a breach of contract.

As an initial matter, we disagree with Arvada's contention that the court erred in relying solely on *Black's Law Dictionary* to ascertain the meaning of "piracy and infringement of copyright or of property."

■ Definitions in a recognized dictionary may be considered when determining the meaning of words used in an insurance policy. *Hecla Mining Co. v. New Hampshire Insurance Co., supra.*

■ In *Hecla*, the supreme court cited definitions not only from *Black's* but also from other dictionaries in support of its conclusion that the word "sudden" was susceptible of more than one reasonable definition and therefore was ambiguous. However, neither *Hecla* nor any other authority of which we are aware *requires* consulting more than one dictionary. Further, it is not inappropriate to look to *Black's* where, as here, the phrase in question relates to a cause of action or other legal concept.

■ Nor do we agree that the phrase at issue here can be deemed ambiguous, or can be read to apply to claims for breach of contract, simply because *Black's* and other dictionaries acknowledge that the term "infringement" can refer to violation of an obligation, including a contractual obligation.

■ Words in an insurance contract cannot be read in isolation, but must be considered in context and as a whole. *See Simon v. Shelter General Insurance Co.*, 842 P.2d 236 (Colo.1992). When the phrase at issue here is considered as a whole, "infringement of property" is far more reasonably construed as referring to a violation of a protected property right, such as a patent or trademark, than as referring to a breach of contract. The trial court was not required to accept the strained construction proposed by Arvada or to force an ambiguity in the lan-

guage in order to resolve the coverage issue against CIRSA. *See Kane v. Royal Insurance Co., supra.*

■ Finally, we find no merit in Arvada's reliance on an asserted "admission" of a CIRSA representative at his deposition that "infringement of property" might possibly include "breach of a leasehold interest." Even if the provision were deemed ambiguous and the referenced statements were deemed admissible evidence of the insurer's intent, *see Fire Insurance Exchange v. Rael,* 895 P.2d 1139 (Colo.App.1995), Arvada's argument fails because it relies on isolated statements and ignores the balance of the deposition testimony. In other portions of the deposition testimony provided to the trial court, the CIRSA representative made it clear that he understood that the Lloyd's policy's CGL coverage did not apply to claims arising out of a contract.

■ We agree with the trial court that Arvada did not make a threshold showing that the underlying complaint alleged personal injury or property damage. Accordingly, like the trial court, we do not reach Arvada's argument that a conflict between the definition of personal injury and the exclusion for expected or intended damages rendered the CGL coverage illusory.

## II.

Arvada also contends that the trial court erred in concluding that there was no E & O coverage for it under the Lloyd's policy. Although Arvada does not dispute that an endorsement to the Lloyd's policy excludes coverage for breach of contract claims, it asserts that the endorsement could not be relied on because it had not properly been brought to Arvada's attention at the time it was added to the policy. Again, we disagree.

The Lloyd's policy in effect at the time the underlying action was filed, a 1992 renewal of an earlier policy, contained an E & O section providing indemnification for "all Loss incurred by the Assured by reason of any Wrongful Act as hereinafter defined." Unlike the earlier policy, the 1992 renewal policy included an endorsement (Endorsement 32) which added to the definition of "Loss" a

provision that the term would not include "any amounts due or payable under the terms of any contractual or quasi-contractual obligation." Endorsement 32 also added an exclusion from E & O coverage for claims "arising out of breach of contract, whether express or implied." CIRSA has conceded that Endorsement 32 decreased the scope of the E & O coverage initially offered.

Arvada argued in the trial court, as it does on appeal, that CIRSA could not rely on Endorsement 32 because it had failed to bring the endorsement to Arvada's attention upon renewal of the policy in 1992. In support of its contention, Arvada cited *Tepe v. Rocky Mountain Hospital & Medical Services,* 893 P.2d 1323 (Colo.App.1994), which held that an individual insured was entitled to coverage for breast cancer treatments where the insurer failed to bring to the insured's attention that such coverage, previously offered, was excluded under its current plan. In so holding, the division in *Tepe* relied on the common law rule that an insurer who fails to notify the insured of limitations regarding coverage may be precluded from relying on the existence of such limitations to avoid liability.

The trial court rejected Arvada's argument. It noted that there was no dispute that Arvada received a copy of Endorsement 32 upon renewal of the policy. The court found it significant that Arvada, unlike the unsophisticated insureds in *Tepe,* employed risk management specialists and attorneys who were responsible for overseeing the CIRSA plans. It thus concluded that, given Arvada's level of sophistication, "no reasonable juror could conclude that Arvada was unaware of the contents of Endorsement 32."

Arvada contends on appeal that the court erred in characterizing it as a sophisticated insured and in concluding that an insured's level of sophistication is relevant to whether it received proper notice of a decrease in coverage. We do not reach these arguments because we conclude that the notice requirements of *Tepe* and of § 10–4–110.5(1), C.R.S. 1998 a statute cited by Arvada that requires insurance companies to provide advance notice of a decrease in benefits in certain circumstances do not apply to CIRSA.

CIRSA is a public entity self-insurance pool, established by intergovernmental agreement among its member municipalities pursuant to § 24–10–115.5, C.R.S.1998, and related statutes. Section 24–10–115.5 provides in relevant part:

(1) Public entities may cooperate with one another to form a self-insurance pool to provide all or part of the insurance coverage authorized by this article or by section 29–5–111, C.R.S. for the cooperating public entities....

(2) Any self-insurance pool authorized by subsection (1) of this section *shall not be construed to be an insurance company nor otherwise subject to the provisions of the laws of this state regulating insurance or insurance companies;* except that the pool shall comply with the applicable provisions of sections 10–1–203 and 10–1–204(1) to (5) and (10), C.R.S.

(Emphasis supplied.)

Under the plain language of the statute, public entity self-insurance pools are not to be construed to be insurance companies and are not otherwise subject to state laws regulating insurance or insurance companies, except that they must comply with §§ 10–1–203, 10–1–204(1) to 10–1–204(5), and 10–1–204(10), C.R.S.1998, which relate to financial examinations conducted by the insurance commissioner.

 Thus, in accordance with the express provisions of § 24–10–115.5, CIRSA is not subject to the notice requirements set forth in § 10–4–110.5(1), which is a "provision[ ] of the laws of this state regulating insurance or insurance companies."

 Further, by providing in § 24–10–115.5(2), C.R.S.1998, that self-insurance pools are not to be "construed to be insurance companies" or otherwise subject to state law regulating these companies, the General Assembly indicated its intent that such pools not be subject to obligations imposed by case law on insurance companies *qua* insurance companies. *Tepe* and the other cases on which Arvada relies are specifically concerned with the notice obligations *of insurance companies.* Indeed, Arvada itself characterizes § 10–4–110.5 as a "codification" of the common law principle, announced in those cases, that an insurer may not decrease coverage benefits upon renewal of a policy unless it notifies the insured in advance of such decrease. It would be anomalous to hold CIRSA subject to the common law rule but not to its statutory codification.

 Accordingly, CIRSA was not subject to the additional notice obligations imposed under § 10–4–110.5 and *Tepe* on insurance companies. Arvada does not dispute that Endorsement 32 was in the policy manual sent to it upon renewal of the Lloyd's policy in 1992; nor does it cite any other basis for deeming the endorsement unenforceable. The trial court was thus not precluded from considering that endorsement in determining whether there was E & O coverage for Arvada under the Lloyd's policy.

The judgment is affirmed.

Judge DAVIDSON and Judge RULAND concur.