**CITY OF ARVADA, Petitioner,**

v.

**COLORADO INTERGOVERNMENTAL RISK SHARING AGENCY, Respondent.**

**No. 99SC418.**

Supreme Court of Colorado,
En Banc.

Feb. 20, 2001.

Rehearing Denied March 12, 2001.

Roberts Levin Zboyan & Patterson, P.C., Thomas L. Roberts, Denver, CO, Attorneys for Petitioner.

Senter Goldfarb & Rice, L.L.C., Thomas S. Rice, Richard W. Pruett, Peter H. Doherty, Denver, CO, Attorneys for Respondent.

Griffiths, Tanoue & Light, P.C., Tami A. Tanoue, Denver, CO, Attorneys for Amici Curiae Colorado Counties Casualty and Property Pool, County Workers' Compensation Pool, Colorado Special Districts Property and Liability Pool.

Berenbaum, Weinshenk & Eason, P.C., Eugene M. Sprague, Denver, CO, Attorneys for Amicus Curiae Colorado School Districts Self–Insurance Pool.

Justice RICE delivered the Opinion of the Court.

We granted certiorari to review the court of appeals' decision in *City of Arvada v. Colorado Intergovernmental Risk Sharing Agency*, 988 P.2d 184 (Colo.Ct.App.1999), holding that the notice requirements of section 10–4–110.5, 3 C.R.S. (2000) do not apply to self-insurance pools established pursuant to section 24–10–115.5, 7 C.R.S. (2000). In so holding, the court of appeals relied on the language in section 24–10–115.5(2) that states, "Any self-insurance pool authorized by ... this section shall not be construed to be an insurance company nor otherwise sub-ject to the provisions of the laws of this state regulating insurance or insurance companies...."

We now affirm the court of appeals' decision and hold that the Colorado Intergovernmental Risk Sharing Agency ("CIRSA" or the "Pool") is not an insurer under section 10–4–110.5, and that section 24–10–115.5 specifically exempts it, as a self-insurance pool, from section 10–4–110.5, because that section regulates insurance. This interpretation is consistent with the plain language of the statutes, the intent of the General Assembly, and caselaw from other jurisdictions that have interpreted similar statutory schemes.

## Facts and Procedural History

CIRSA is a public entity self-insurance pool created under the authority of section 24–10–115.5, and is comprised of over 150 municipalities throughout Colorado. The Pool is formed by an intergovernmental agreement that operates as the Pool's by-laws. Under the agreement, individual members of the Pool maintain a self-insured retention ("SIR"): an amount of loss ranging from $1,000 to $150,000 for which they are responsible before the Pool's coverage becomes applicable. Above each member's SIR, CIRSA covers losses up to $400,000. For losses greater than $400,000, CIRSA had purchased excess insurance from Lloyd's of London ("Lloyd's"), which covers losses up to $1 million. The individual municipalities are named insureds on the Lloyd's policy. The coverage by the Pool does not apply to all losses; rather, the coverage terms mirror those contained in the Lloyd's policy. In other words, only if a loss would be covered by Lloyd's, is it covered by the Pool. If an exclusion or endorsement would preclude coverage under the commercial policy, coverage is similarly barred by the Pool. In these situations, the municipality is responsible for covering its own losses in their entirety.

The City of Arvada (the "City") joined CIRSA in 1989 under coverage that was effective from January 1, 1989 until January 1, 1992. Under this coverage, the City elected to maintain a $150,000 SIR. The City renewed its coverage in 1992 under policy terms effective until January 1, 1995. Upon

renewal, the City was provided with a revised copy of the Pool Manual which contained coverage provisions contracted for and agreed upon by the separate members of the Pool. Although the City had received a copy of "Endorsement 32," a new provision in the Lloyd's policy that summarily excluded coverage for breach of contract claims, it did not receive explicit notice from CIRSA of the new provision.

In the underlying action that gave rise to the instant dispute, the City leased restaurant facility space to ACRC, Inc. d/b/a/ Café Montmartre ("ACRC"). The City later breached the lease, and ACRC sued, claiming, among other things, breach of contract and bad faith. The City submitted the suit to CIRSA, requesting both defense and indemnification. CIRSA denied the claim, relying on Endorsement 32 of the Lloyd's policy.[1] Subsequently, a judgment in the amount of $422,054 was entered against the City, at which time the City renewed its request for coverage. Again CIRSA denied its request, and this suit followed.

The City alleges that Endorsement 32 is unenforceable under section 10–4–110.5, which invalidates coverage reductions included in renewal policies absent explicit written notice. The City also argues that *Tepe v. Rocky Mountain Hospital & Medical Services*, 893 P.2d 1323 (Colo.Ct.App.1994), which holds that broader coverage contained in an earlier policy applies when an insured is not notified of a reduction in coverage in a renewal policy, renders Endorsement 32 unenforceable. The court of appeals rejected these arguments, finding that under section 24–10–115.5, self-insurance pools are not subject to laws regulating insurance such as section 10–4–110.5. *City of Arvada*, 988 P.2d at 189. The court further held that *Tepe*, which specifically concerned the notice obligations of insurance companies, is inapplicable to the present case because section 24–

10–115.5 was intended by the legislature to exempt self-insurance pools from obligations imposed by case law concerning insurance companies. *Id.* This appeal followed.

■ We must now determine whether CIRSA had a duty to notify the City of its reduction in coverage in the 1992 renewal policy under section 10–4–110.5.[2] We hold that CIRSA had no duty to notify the City of the addition of Endorsement 32 to the Lloyd's policy because CIRSA is not an insurer under section 10–4–110.5, and because section 24–10–115.5 specifically exempts it, as a self-insurance pool, from section 10–4–110.5, because that section regulates insurance.

## Analysis

In 1986, the General Assembly amended the insurance laws under Title 10 of the Colorado Revised Statutes to add the notice provisions at issue here. Those provisions, contained in section 10–4–110.5, provide in relevant part that:

> No *insurer* shall ... decrease the coverage benefits on renewal of a policy of insurance that provides coverages .... unless the *insurer* mails by first-class mail to the named insured ... at least forty-five days in advance a notice, accompanied by the reasons therefor, stating the renewal terms and the amount of the premium due. If the *insurer* fails to furnish the renewal terms ... at least forty-five days prior to the expiration date of the policy, the *insurer* shall automatically extend the existing policy for a period of forty-five days .... If the *insurer* fails to meet the requirements of this section prior to the expiration date of the existing policy, the *insurer* shall be deemed to have renewed the insured's policy for an identical policy period at the

---

1. An internal memo sent to the City's risk manager from a deputy city attorney prior to submission of the claim to CIRSA acknowledged that "since [the claim] relates to a lease and allegation of breach of contract, CIRSA will probably deny the coverage." R., Vol. I at 110.

2. The precise issue presented for review is: "Whether the court of appeals erred in interpret-

ing the Colorado Governmental Immunity Act, C.R.S. § 24–10–115.5, as precluding application of insurance common law or statutes to the Colorado Intergovernmental Risk Sharing Agency ("CIRSA") the insurance pool that provides liability coverage and claims handling for municipalities throughout this State."

same terms, conditions, and premium as the existing policy.

§ 10–4–110.5 (emphasis added).[3]

▮ To determine whether self-insurance pools are subject to the notice provisions of 10–4–110.5, we look first to the language of the statute[4] and specifically to the definitions of the words "insurance company," "insurance," and "insurer." These terms are defined in the following manner: "Insurance company" includes "corporations, associations, partnerships, or individuals engaged as insurers in the business of insurance." § 10–1–102(4), 3 C.R.S. (2000). "Insurance" is defined as "a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies." § 10–1–102(7), 3 C.R.S. (2000). Finally, "insurer" is defined as "every person engaged as a principal, indemnitor, surety, or contractor in the business of making contracts of insurance." § 10–1–102(8), 3 C.R.S. (2000).

▮ It is clear from these definitions that a self-insurance pool does not qualify as either an insurance company or an insurer. Self-insurance pools are not in the *business* of making contracts of insurance, as they are not for-profit associations. *See Crist v. Mo. Intergovernmental Risk Mgmt. Ass'n,* No. 39,286, 1988 Mo.App. LEXIS 203 at *10 (Mo. Ct.App.1988) (holding that a self-insurance

pool is not an unauthorized insurance business because it is "an association of municipalities ... [that] does not ... attempt to make a profit or accumulate a surplus"); *Black's Law Dictionary* 192 (7th ed.1999) (defining "business" as "a commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain"). Furthermore, insurance pools do not undertake the indemnification of a third party. Rather, an insurance pool is, in essence, an extension of each member, as the funds that provide the coverage come directly from the members, and the type and extent of coverage is determined collectively by the members themselves. Thus, self-insurance pools are more properly likened to simple self-insurance than to insurance companies.[5]

Indeed, by enacting section 24–10–115.5, the statute authorizing the creation of self-insurance pools, the legislature intended to distinguish between such pools and traditional insurance by exempting self-insurance pools from laws regulating traditional insurance companies. Section 24–10–115.5 provides, in relevant part, that: "Any self-insurance pool authorized by ... this section shall not be construed to be an *insurance company* nor otherwise subject to the provisions of the laws of this state *regulating insurance or insurance companies ....*" § 24–10–115.5(2) (emphasis added).[6]

---

3. In *Tepe v. Rocky Mountain Hospital & Medical Services,* 893 P.2d 1323, 1327–1330 (Colo.Ct.App. 1994), the court of appeals held, without relying on section 10–4–115.5, that an insured must receive clear and unequivocal notice of a reduction in coverage from an insurer. In doing so, the court noted that the notice requirement was unique to an *insurer-insured* relationship, thus incorporating the language of the notice statute. *Id.* at 1327.

4. When interpreting the meaning behind a statute, well-established principles of law dictate that courts must first look to the plain language of the statute to discern the intent of the General Assembly. *See Snyder Oil Co. v. Embree,* 862 P.2d 259, 262 (1993) (citing *Farmers Group, Inc. v. Williams,* 805 P.2d 419, 422 (Colo.1991)).

5. In an action to recover damages for personal injuries sustained in a motor vehicle accident, the Supreme Court of Connecticut recognized "the substantial authority for the position that self-insurance is not insurance at all." *Doucette*

*v. Pomes,* 247 Conn. 442, 724 A.2d 481, 490 (1999). In doing so, the court cited an insurance treatise that asserts that, "A certificate of self-insurance can in nowise be equated with an insurance contract or policy." *Id.* (quoting J. Appleman & J. Appleman, *Insurance Law and Practice* § 7002 (1981)). The court went on to hold that by retaining its risk, Metropolitan—the group at issue in *Doucette*—"did not thereby become transformed into an insurer." *Id.* Furthermore, the court stated, "a self-insured ... group is more like a self-insurer than an insurer." *Id.* at 492.

6. Although the statute lists exceptions to the rule that self-insurance pools are not subject to laws regulating insurance or insurance companies, the notice provision in question is not among them: "[T]he pool shall comply with the applicable provisions of sections 10–1–203 and 10–1–204(1) to (5) and (10), C.R.S." § 24–10–115(2). Under the canon *expressio unius est exclusio alterius* (the inclusion of one thing implies the

Modeled after a similar statute in California, section 24–10–115.5 was enacted in response to the rapidly rising costs—and occasional altogether unavailability—of liability insurance for municipalities and other public entities. Hearing on House Bills 77–1002 & 77–1003, Before the House Committee on Business Affairs and Labor, 51st General Assembly, 1st Session (hearing tape, Jan. 11, 1977, 1:35 p.m.–2:20 p.m.) (hereinafter "Hearing on HBs 77–1002/1003").[7] The General Assembly had hoped to provide to public entities with a less expensive alternative to commercial insurance. Hearing on HBs 77–1002/1003. Dee Wisor of the Colorado Municipal League testified at the hearings regarding the statute that: "[W]hat we're asking for ... is to provide an alternative means of insurance coverage." Hearing on HBs 1002/1003.

Other jurisdictions that have addressed similar statutes have also distinguished self-insurance pools from traditional insurance companies. For example, in *Orange County Water District v. Association of California Water Agencies Joint Powers Insurance Authority*, 54 Cal.App.4th 772, 63 Cal.Rptr.2d 182 (1997), the California Court of Appeal reviewed the California statute upon which Colorado's was modeled. It held that a self-insurance pool was not "insurance" subject to a commercial insurer's policy provision that its coverage will not apply until all "other insurance" is exhausted. *Id.* at 187. In so holding, the court noted that the California statute specifically provided that self-insurance pools are "not insurance and is not subject to regulation by the Department of Insurance as such." *Id.* at 185 (interpreting

1976 Cal. Stat. 990.8(c)). In support of its holding, the *Orange County* court found that a self-insurance pool does not operate like insurance, because it "does not contract to indemnify another, nor does the [pool] indemnify its member agencies in the traditional sense." *Id.; see also Nabisco, Inc. v. Transport Indem. Co.*, 143 Cal.App.3d 831, 192 Cal.Rptr. 207, 209 (1983) (noting that "We recognize the term 'self-insurance,' while perhaps a misnomer, is nevertheless a common and accepted concept in risk management today.").

Similarly, in *City of South El Monte v. Southern California Joint Powers Insurance Authority*, 38 Cal.App.4th 1629, 45 Cal. Rptr.2d 729, 732 (1995), the court of appeal held that self-insurance pools were not subject to the same requirements as commercial insurers. The court there held that the only purpose of the self-insurance pool statute was to provide municipalities and other public entities with a relatively inexpensive alternative to commercial insurance by removing the pools from regulation under the Insurance Code. *Id.* at 731–32.

> [To subject] the pools to the statutory requirements of the Insurance Code would place member entities in the position of having the same duties and obligations as commercial insurers. Such an arrangement would adversely affect the pool's ability to provide members cost-effective liability coverage and subsequently defeat the purpose and intent of these self-insuring groups.

*Id.* at 731.[8]

Finally, we reject the City's argument that CIRSA has consistently been treated by

---

exclusion of another), this omission indicates that the legislature did not intend for section 10–4–110.5 to apply to self-insurance pools. *See Lunsford v. W. States Life Ins.*, 908 P.2d 79, 84 (Colo.1995) (holding that, "When the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others").

**7.** At those hearings, Representative DeMoulin, the sponsor of the bill, stated, "There's a couple of problems the local governments are running into ... and that is the unavailability of insurance at any price and the extremely high price of insurance." Hearing on HBs 77–1002/1003.

**8.** California is not alone in holding that the same rules and requirements that govern commercial insurers do not govern self-insurance pools. *E.g., Doucette v. Pomes*, 247 Conn. 442, 724 A.2d 481 (1999) (holding that just because a self-insurance pool involves the transference of risk does not make it an insurer or insurance); *Young v. Progressive S.E. Ins. Co.*, 753 So.2d 80, 85–86 (Fla.2000) (holding that a self-insurance pool "does not constitute insurance in any real sense" because it retains the risk of loss); *Crist v. Mo. Intergovernmental Risk Mgmt. Ass'n*, 1988 Mo. App. LEXIS 203 (Mo.Ct.App.1988) (finding that a self-insurance plan is not an unauthorized insurance business because it does not make insurance available to the public, or accumulate a

courts as an "insurer," and should therefore be subject to the notice provisions of section 10–4–110.5. The City erroneously relies on *City of Thornton v. Replogle*, 888 P.2d 782 (Colo.1995) and *City of Littleton v. Commercial Union Assurance Cos.*, 133 F.R.D. 159 (D.Colo.1990), in support of its argument. Unlike the case at bar, these cases do not involve the application of the notice provision under section 10–4–110.5. In *Replogle*, this court referred to CIRSA as the City of Thornton's "insurer" in the context of a workers' compensation case. That designation was made without regard or reference to the definitions in section 10–1–102 and in no way evidences an intent by this court to treat self-insurance pools as insurance companies or insurers. In *City of Littleton*, a federal district court referred to CIRSA as both an insurer and a corporation in the context of a federal environmental clean up case rather than in the context of the notice provisions at issue in this case. Thus, these cases are inapposite in our determination of whether insurance pools constitute insurance companies or insurers as defined in section 10–1–102.

### Conclusion

In sum, a review of the statutory language, the legislative history, and the relevant caselaw from other jurisdictions demonstrates that self-insurance pools do not qualify as "insurers" under section 10–1–102(8). As such, self-insurance pools are not subject to the notice requirements set forth in 10–4–110.5.

Therefore, we hold that CIRSA did not violate any duty owed to the City by failing to notify it of the addition of Endorsement 32 to the Lloyd's policy. Accordingly, we affirm the court of appeals' judgment that the trial court properly granted summary judgment in favor of CIRSA because public entity self-

profit); *Stratton v. Med. Ctr. Rehab. Hosp.*, 547 N.W.2d 748, 750 (N.D.1996) (holding that because self-insurance pools are not insurers, municipalities do not waive their governmental immunity by procuring liability coverage through a pool); *Va. Mun. Liab. Pool v. Kennon*, 247 Va.

insurance pools are not subject to the notice provisions of section 10–4–110.5.

254, 441 S.E.2d 8, 10 (1994) (holding that a group self-insurance pool is not subject to statutory provisions regarding uninsured motorist coverage because it is neither an insurance company nor an insurer).