GERALD DOUCETTE, JR. *v.* TAMARA J. POMES ET AL.
(SC 15849)

Callahan, C. J., and Berdon, Norcott, Katz and Palmer, Js.

Argued October 28, 1998—officially released January 26, 1999

*Peter J. Casey*, for the appellants (named defendant et al.).

*Joseph C. Tanski*, pro hac vice, with whom were *Henry K. Snyder* and, on the brief, *Alan J. Cooke*, pro hac vice, for the appellant (defendant Connecticut Insurance Guaranty Association).

*Anne Kelly Zovas*, for the appellee (intervening plaintiff).

*Opinion*

KATZ, J. The principal issue in this appeal is whether the intervening plaintiff, Metropolitan District Commission (Metropolitan), as a self-insurer under the Workers' Compensation Act; General Statutes § 31-275 et seq.; is an "insurer" under General Statutes § 38a-838 (6),[1]

---

[1] General Statutes § 38a-838 (6) provides: " 'Covered claim' means an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which sections 38a-836 to 38a-853, inclusive, apply issued by an insurer, if such insurer becomes an insolvent insurer after October 1, 1971, and (a) the claimant is a resident of this state at the time of the insured event; or (b) the claimant is not a resident of this state, but only under all of the following conditions: (i) The insured is a resident of this state at the time of the insured event; (ii) the insolvent insurer is licensed to do business in this state at the time of the insured event; (iii) the state of the claimant's residence has an association similar to the association created by said sections; and (iv) such claimant is refused coverage by such association because the insolvent insurer is not licensed to do business in the state of the claimant's residence at the time of the insured event; or (c) the property from which the claim arises is permanently located in this state, provided *the term 'covered claim' shall not include any amount*

thereby precluding it from recovering from the defendant Connecticut Insurance Guaranty Association (association)[2] pursuant to the Connecticut Insurance Guaranty Association Act (guaranty act).[3] We conclude that Metropolitan is not an insurer and therefore that it may assert a valid claim under the guaranty act.

The record discloses the following facts and procedural history. On or about June 13, 1989, during the course of his employment, the plaintiff, Gerald Doucette, Jr., was a passenger in a truck operated by Frank Palmer when the truck was involved in an accident with a motor vehicle operated by the named defendant, Tamara J. Pomes, and owned by the defendant Askel Jensen, Pomes' father. As a result of the accident, Doucette sustained personal injuries and thereafter instituted an action, against Pomes and Jensen, pursuant to General Statutes § 31-293,[4] which authorizes an

due any reinsurer, *insurer*, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool or underwriting association, would be a 'covered claim' may be filed directly with the receiver of the insolvent insurer but in no event shall any such claim be asserted against the insured of such insolvent insurer. A claim shall not be a 'covered claim' if it is filed by or on behalf of an individual who is neither a citizen of the United States nor an alien legally resident in the United States at the time of the insured event, or an entity other than an individual whose principal place of business is not in the United States at the time of the insured event, and it arises out of an accident, occurrence, offense, act, error or omission that takes place outside of the United States, or a loss to property normally located outside of the United States or, if a workers' compensation claim, it arises out of employment outside of the United States." (Emphasis added.)

[2] "The association is a nonprofit legal entity established by General Statutes § 38a-839 and governed by the Connecticut Insurance Guaranty Association Act, which is codified at General Statutes § 38a-836 et seq. The association was established in order to reimburse, to a limited extent, covered claims against insolvent insurers." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 439 n.1, 705 A.2d 1012 (1997).

[3] General Statutes §§ 38a-836 to 38a-853, inclusive.

[4] General Statutes § 31-293 provides in pertinent part: "Liability of third persons to employer and employee. Limitations on liability of architects

injured employee to seek recovery from a third party, other than the employer, for work-related injuries caused by that third party. Pomes admitted liability in

and engineers. Limitations on liability of insurers, self-insurance service organizations and unions relating to safety matters. (a) When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a·person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury; and any employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the others may join as parties plaintiff in the action within thirty days after such notification, and, if the others fail to join as parties plaintiff, their right of action against such person shall abate. In any case in which an employee brings an action against a party other than an employer who failed to comply with the requirements of subsection (b) of section 31-284, in accordance with the provisions of this section, and the employer is a party defendant in the action, the employer may join as a party plaintiff in the action. The bringing of any action against an employer shall not constitute notice to the employer within the meaning of this section. If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. The rendition of a judgment in favor of the employee or the employer against the party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the person by either the employer or the employee shall be binding upon or affect the rights of the other,

the amount of $15,000. At the time of the accident, Doucette carried at least $20,000[5] of uninsured motorist

unless assented to by him. For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. The word 'compensation', as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. Each employee who brings an action against a party in accordance with the provisions of this subsection shall include in his complaint (A) the amount of any compensation paid by the employer or the Second Injury Fund on account of the injury which is the subject of the suit and (B) the amount equal to the present worth of any probable future payments which the employer or the Second Injury Fund has, by award, become obligated to pay on account of the injury. Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement.

"(b) When an injury for which compensation is payable under the provisions of this chapter is determined to be the result of a motor vehicle accident or other accident or circumstance in which a third person other than the employer was negligent and the claim is subrogated by the employer or its workers' compensation insurance carrier, the insurance carrier shall provide a rate adjustment to the employer's workers' compensation policy to reflect the recovery of any compensation paid by the insurance carrier prior to subrogation. . . ."

[5] The record does not specify the coverage limit of the Shelby policy. General Statutes §§ 38a-336 and 14-112 provide, however, that each automobile liability insurance policy shall provide uninsured and underinsured motorist coverage of at least $20,000 for personal injuries.

coverage under his parents' automobile insurance policy with Shelby Insurance Group (Shelby). He brought a claim under the policy that resulted in Shelby paying him $13,000 in uninsured motorist benefits.

Doucette also notified his employer, Metropolitan, of the accident. Because Doucette was injured during the course of his employment, Metropolitan, which had chosen to meet its statutory workers' compensation coverage obligation through self-insurance,[6] paid Doucette's medical expenses in the amount of $3802.72 and compensation benefits in the amount of $8995.45, for a total payment of $12,798.17. Further, Metropolitan has stipulated that Doucette's future medical and compensation payments that may be awarded by the workers' compensation commissioner total $2201.83.

At the time of the accident, Pomes and Jensen carried liability insurance coverage through American Universal Insurance Company (American), which subsequently was determined to be insolvent. Consequently, pursuant to General Statutes § 38a-841[7] of the guaranty

---

[6] General Statutes § 31-284b (b) provides: "An employer may provide such equivalent accident and health or life insurance coverage or welfare plan payments or contributions [as provided in subsection (a)] by: (1) Insuring his full liability under this section in any stock or mutual companies or associations that are or may be authorized to take such risks in this state; (2) creating an injured employee's plan as an extension of any existing plan for working employees; (3) self-insurance; or (4) by any combination of the methods provided in subdivisions (1) to (3), inclusive, of this subsection that he may choose." Although the legislature has made technical changes to § 31-284b (b) since 1989, the time of the accident in this case, the statute remains substantively the same.

[7] General Statutes § 38a-841 provides in relevant part: "Obligations of association. Limitations. Assessments. Investigation of claims. (1) Said association shall: (a) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within thirty days after the determination of insolvency, or before the policy expiration date if less than thirty days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within thirty days of such determination, provided such obligation shall be limited as follows: (i) With respect to covered claims for unearned premiums, to one-half of the

unearned premium on any policy, subject to a maximum of two thousand dollars per policy; (ii) with respect to covered claims other than for unearned premiums, such obligation shall include only that amount of each such claim which is in excess of one hundred dollars and is less than three hundred thousand dollars, except that said association shall pay the full amount of any such claim arising out of a workers' compensation policy, provided in no event shall (A) said association be obligated to any claimant in an amount in excess of the obligation of the insolvent insurer under the policy form or coverage from which the claim arises, or (B) said association be obligated for any claim filed with the association after the expiration of two years from the date of the declaration of insolvency; (b) be deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent; (c) allocate claims paid and expenses incurred among the three accounts, created by section 38a-839, separately, and assess member insurers separately (i) in respect of each such account for such amounts as shall be necessary to pay the obligations of said association under subdivision (a) of subsection (1) of this section subsequent to an insolvency; (ii) the expenses of handling covered claims subsequent to an insolvency; (iii) the cost of examinations under section 38a-846 and (iv) such other expenses as are authorized by sections 38a-836 to 38a-853, inclusive. The assessments of each member insurer shall be in the proportion that the net direct written premiums of such member insurer for the calendar year preceding the assessment on the kinds of insurance in such account bears to the net direct written premiums of all member insurers for the calendar year preceding the assessment on the kinds of insurance in such account. Each member insurer shall be notified of its assessment not later than thirty days before it is due. No member insurer may be assessed in any year on any account an amount greater than two per cent of that member insurer's net direct written premiums for the calendar year preceding the assessment on the kinds of insurance in said account, provided if, at the time an assessment is levied on the 'all other insurance' account, as defined in subdivision (c) of section 38a-839, the board of directors finds that at least fifty per cent of the total net direct written premiums of a member insurer and all its affiliates, for the year on which such assessment is based, were from policies issued or delivered in Connecticut, on risks located in this state, such member insurer shall be assessed only on such member insurer's net direct written premium that is attributable to the kind of insurance that gives rise to each covered claim. If the maximum assessment, together with the other assets of said association in any account, does not provide in any one year in any account an amount sufficient to make all necessary payments from that account, the funds available may be prorated and the unpaid portion shall be paid as soon thereafter as funds become available. Said association may defer, in whole or in part, the assessment of any member insurer, if the assessment would cause the member insurer's financial statement to reflect amounts of capital or surplus less than the

act, the association became liable for covered claims[8] arising under American's policies.[9] Metropolitan intervened as a plaintiff in Doucette's action, seeking a

minimum amounts required for a certificate of authority by any jurisdiction in which the member insurer is authorized to transact insurance provided that during the period of deferment, no dividends shall be paid to shareholders or policyholders. Deferred assessments shall be paid when such payment will not reduce capital or surplus below the minimum amounts required for a certificate of authority. Such payments shall be refunded to those insurers receiving greater assessments because of such deferment or, at the election of the insurer, be credited against future assessments. Each member insurer serving as a servicing facility may set off against any assessment, authorized payments made on covered claims and expenses incurred in the payment of such claims by such member insurer if they are chargeable to the account in respect of which the assessment is made; (d) investigate claims brought against said association and adjust, compromise, settle, and pay covered claims to the extent of said association's obligations, and deny all other claims. The association shall pay claims in any order it deems reasonable, including but not limited to, payment in the order of receipt or by classification. It may review settlements, releases and judgments to which the insolvent insurer or its insureds were parties to determine the extent to which such settlements, releases and judgments may be properly contested; (e) notify such persons as the commissioner may direct under subdivision (a) of subsection (2) of section 38a-843; (f) handle claims through its employees or through one or more insurers or other persons designated by said association as servicing facilities, provided such designation of a servicing facility shall be subject to the approval of the commissioner, and may be declined by a member insurer; (g) reimburse each such servicing facility for obligations of said association paid by such facility and for expenses incurred by such facility while handling claims on behalf of said association and shall pay such other expenses of said association as are authorized by sections 38a-836 to 38a-853, inclusive. . . ."

[8] Section 38a-838 (6) defines a covered claim as "an unpaid claim, including, but not limited to, one for unearned premiums, which arises out of and is within the coverage" of an insurer that becomes insolvent. See footnote 1 of this opinion for the complete text of this subsection.

[9] This court brought a motion, sua sponte, to dismiss this appeal due to the absence of the association, an indispensable party. After a hearing on the issue, however, rather than dismiss the appeal, we elected to treat the association as a party defendant and its amicus curiae brief as the brief of a party. The association offered no objection and became a party effective June 8, 1998.

Because the defendants sometimes make different arguments, we will refer to them individually when necessary. Otherwise, references to "the defendants" will pertain to all defendants collectively.

$15,000 judgment against Pomes and Jensen to recover for the payments already made and the future anticipated payments that might be awarded to Doucette. On December 10, 1992, having received $13,000 from Shelby and $12,798.17 from Metropolitan, Doucette withdrew his complaint against Pomes and Jensen.

Pomes and Jensen responded to Metropolitan's intervening complaint by asserting as a special defense that Metropolitan is an insurer within the meaning of the guaranty act and is therefore precluded from recovering from the association because § 38a-838 (6) excludes from "covered claims" "any amount due any reinsurer, *insurer*, insurance pool, or underwriting association, as subrogation recoveries or otherwise . . . ."[10] (Emphasis added.) Metropolitan replied to the special defense by denying every allegation contained therein. On August 9, 1996, Metropolitan moved for summary judgment. It amended its motion on September 9, 1996, asserting that it was not an insurer under § 38a-838 (6). On October 11, 1996, Pomes and Jensen filed a cross motion for summary judgment based upon the claim that Metropolitan is an insurer. Thereafter, the trial court concluded that Metropolitan is not an insurer and denied the cross motion. The trial court's reasoning is fully set forth in its July 24, 1997 memorandum of decision on the defendants' motion to reconsider, in which

---

[10] Although Pomes and Jensen appear to be arguing against their interests by asserting that Metropolitan cannot recover from the association, thereby leaving only Pomes and Jensen potentially liable to Metropolitan, Pomes and Jensen note that § 38a-838 (6) (c) provides in part that "a claim . . . asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool or underwriting association, would be a 'covered claim' may be filed directly with the receiver of the insolvent insurer *but in no event shall any such claim be asserted against the insured of such insolvent insurer*. . . ." (Emphasis added.) Moreover, as the association notes: "If [Metropolitan] were permitted to recover from [Pomes and Jensen], [Pomes and Jensen] . . . would likely seek indemnification from [the association]." Therefore, it appears that the association is the true party in interest.

the court again concluded that Metropolitan, as a self-insurer, was not an insurer for purposes of the guaranty act. Additionally, the court rejected the claim that Metropolitan is barred from recovering because Doucette had failed to exhaust the policy limits of his uninsured motorist policy. Consequently, on September 26, 1997, the court rendered judgment in favor of Metropolitan in the amount of $15,000. On October 15, 1997, the defendants appealed from the judgment to the Appellate Court. Pursuant to Practice Book § 65-1, formerly § 4023, and General Statutes § 51-199 (c), we transferred the appeal to this court.

The defendants raise several issues on appeal. First, they claim that Metropolitan, as a self-insurer, is an insurer for purposes of the guaranty act and, therefore, is precluded from recovering from the association pursuant to § 38a-838 (6). Second, the defendants contend that, even if Metropolitan is not an insurer under the guaranty act, any recovery it obtains from the defendants should be reduced by the limits of Doucette's uninsured motorist policy because Doucette failed to exhaust the policy limits, as required by General Statutes § 38a-845. Third, the defendants claim that any recovery by Metropolitan should be reduced by the amount of workers' compensation benefits received by Doucette or the amount of uninsured motorist benefits he received from his insurance company. Finally, Pomes and Jensen claim that any recovery Metropolitan obtains must be reduced by any amounts Shelby paid to Doucette. We disagree with the defendants.

Before turning to the merits of the case, we set forth the well established standard of review for a denial of summary judgment. "Summary judgment 'shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Home Ins. Co.* v.

*Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1996), quoting Practice Book § 384, what is now § 17-49. The trial court was presented with cross motions for summary judgment based on stipulated facts. Therefore, our review is plenary and we must determine whether the trial court's conclusions of law "are legally and logically correct" and find support in the stipulated facts. *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996), citing Practice Book § 4061, what is now § 60-5.

I

The defendants' first claim, that Metropolitan's status as self-insurer of its employees' workers' compensation claims renders it an insurer for purposes of the guaranty act, raises an issue of first impression for this court.[11] At the time of the accident in 1989, as it does today, § 31-284b (b) authorized an employer to meet its workers' compensation obligations under chapter 568 by one of three enumerated methods, or any combination of those methods, one of which was self-insurance.[12] To become a self-insured employer, an employer must provide to the chairman of the workers' compensation commission "satisfactory proof of his solvency and financial

---

[11] We recently addressed the issue of the obligation of a self-insured employer to provide uninsured motorist benefits under General Statutes § 38a-336 (f), which provides for coverage to an "employee of a named insured." In *Conzo* v. *Aetna Ins. Co.*, 243 Conn. 677, 686, 705 A.2d 1020 (1998), we held that a self-insured employer was required to provide such benefits. We also concluded that the self-insured employer was an insurer within the meaning of General Statutes § 38a-363, which defines terms used in our no-fault motor vehicle insurance statutes. Id., 683. It is noteworthy, however, that § 38a-363 expressly includes a self-insurer within the definition of "insurer." As we note in part I A of this opinion, the statutes at issue in the present appeal do not expressly define an insurer as encompassing self-insurers. Therefore, the conclusion that the self-insured employer in *Conzo* was an insurer does not inform our decision as to the status of the employer in the present appeal.

[12] See footnote 6 of this opinion.

ability to pay directly to injured employees" compensation provided for in the Workers' Compensation Act. General Statutes § 31-284 (b). As noted, Metropolitan chose to self-insure its risk rather than contract for coverage with a workers' compensation insurance provider.

The defendants argue that, as a self-insurer, Metropolitan is barred from recovering from the association. Before addressing the merits of this claim, we discuss briefly the association itself. "The association was established for the purpose of providing a limited form of protection for policyholders and claimants in the event of insurer insolvency. The protection it provides is limited based upon its status as a nonprofit entity and the method by which it is funded. Specifically, the association is a nonprofit legal entity created by statute to which all persons licensed to transact insurance in the state must belong. See General Statutes §§ 38a-838 (8) and 38a-839. When an insurer is determined to be insolvent under § 38a-838 (7), the association becomes obligated pursuant to § 38a-841, to the extent of covered claims within certain limits." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 451, 705 A.2d 1012 (1997). The amounts paid to claimants are funded by assessments made on "member insurers"; General Statutes § 38a-841;[13] who are obligated to be members of the association as a requirement of transacting insurance business in the state. General Statutes § 38a-838 (8).[14]

"Pursuant to . . . § 38a-841, the association is authorized to pay only covered claims, and must deny all other claims. In order to be reimbursable by the

---

[13] See footnote 7 of this opinion.

[14] General Statutes § 38a-838 (8) provides: " 'Member insurer' means any person who (a) writes any kind of insurance to which sections 38a-836 to 38a-853, inclusive, apply under section 38a-837, including but not limited to the exchange of reciprocal or interinsurance contracts, and (b) is licensed to transact insurance in this state . . . ."

association, a claim against the association must be encompassed within the definition of a covered claim contained in § 38a-838 (6)." *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 449–50. Section 38a-838 (6), which defines terms in the guaranty act, excludes from the definition of a covered claim "any amount due any reinsurer, *insurer*, insurance pool, or underwriting association, as subrogation recoveries or otherwise . . . ." (Emphasis added.) We must determine, therefore, whether Metropolitan, as a self-insurer, is an insurer for purposes of the guaranty act and, consequently, is precluded by § 38a-838 (6) from recovering from the association.

## A

Our method of statutory interpretation is well established. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Citations omitted; internal quotation marks omitted.) *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996).

We begin our analysis, therefore, with an examination of the words of the statute itself. The guaranty act does not define the term "insurer." It merely defines "[i]nsolvent insurer," which provides for the circumstances in which an insurer is to be considered insolvent so that its obligations will be met by the association;

General Statutes § 38a-838 (7); and "member insurer," which defines the type of insurer that is required to be a member of the association and to be subject to the association's assessments. General Statutes § 38a-838 (8). Neither definition is instructive on the issue before us.

Section 38a-838 (6) bars recovery by any "reinsurer, insurer, insurance pool, or underwriting association . . . ." The legislature did not expressly preclude self-insurers from recovering. The defendants argue, however, that a self-insurer *is* an insurer, so explicit mention of self-insurers in the section would be redundant. We disagree with the defendants for several reasons.

First, General Statutes § 38a-1 provides that, for purposes of title 38a, entitled "Insurance," the terms defined in the section "unless it appears from the context to the contrary, shall have a scope and meaning as set forth in [the] section." Section 38a-1 (10) defines insurance as "any agreement to pay a sum of money, provide services or any other thing of value on the happening of a particular event or contingency or to provide indemnity for loss in respect to a specified subject by specified perils *in return for a consideration.* In any contract of insurance, an insured shall have an interest which is subject to a risk of loss through destruction or impairment of that interest, which risk is assumed by the insurer and such assumption shall be part of a general scheme to distribute losses among a large group of persons bearing similar risks in return for a ratable contribution or other consideration." (Emphasis added.) Thus, the legislature defines insurance as the assumption of another's risk for profit. An employer that self-insures for workers' compensation purposes retains its own risk; it does not assume the risk of another. Moreover, it does not receive consideration. It is merely fulfilling its obligations under the Workers' Compensation Act to ensure that its workers

will receive compensation under the appropriate circumstances. Therefore, according to the language of § 38a-1 (10), the definition of insurance does not include self-insurance for purposes of the guaranty act.

Additionally, § 38a-1 (11) defines an "insurer" as including "any corporation, association, partnership or combination of persons doing any kind or form of insurance business other than a fraternal benefit society, and shall include a receiver of any insurer when the context reasonably permits. . . ." The fact that a self-insuring employer has chosen to retain its own workers' compensation risk rather than purchase insurance does not transform a company's business to that of insurance, that is, the employer is not "doing any kind or form of insurance business" within the meaning of § 38a-1 (11). Moreover, the subsection goes on to define "alien insurer," "domestic insurer," "foreign insurer," "mutual insurer" and "unauthorized insurer." As in § 38a-838 (6), the legislature made no mention of self-insurers. We have stated that "[u]nless there is evidence to the contrary, statutory itemization indicates that the legislature intended [a] list to be exclusive." (Internal quotation marks omitted.) *State* v. *Kish*, 186 Conn. 757, 766, 443 A.2d 1274 (1982). We do not find sufficient evidence to the contrary in this case. Therefore, according to the plain language of the statute, a self-insurer is not an insurer under title 38a.[15]

---

[15] The defendants claim that it *does* appear from the context that the legislature intended to include self-insurers in § 38a-1 (11). They assert that, because the purpose of the guaranty act is to protect insureds and injured claimants, and Metropolitan fits into neither category, a determination that Metropolitan is not an insurer would be contrary to the act's purpose. Pomes and Jensen claim that if the association is required to pay Metropolitan, "the ultimate beneficiary would be an insurer [Metropolitan] and not the injured claimant, Doucette." This tautological argument presupposes, however, that Metropolitan is an insurer. This argument fails because, as we conclude, Metropolitan is *not* an insurer.

The association also claims that a reading of § 38a-845, which provides that the association's obligations shall be reduced by any recoveries made

Additionally, we recognize the substantial authority for the position that self-insurance is not insurance at all. See 12 J. Appleman & J. Appleman, Insurance Law and Practice (1981) § 7002, p. 22 ("[a] certificate of self-insurance can in nowise be equated with an insurance contract or policy"). Scholars have discussed self-insurance as follows: "Risk transference or risk distribution may be accomplished without using insurance. . . . For example, entities that provide goods or services to many individuals . . . could choose to handle the risk of personal injury claims by 'setting aside' assets —either by accounting entries or by actually establishing a special fund—from which it will pay such claims, *rather than by purchasing insurance.* . . . Although an entity that handles the risk of tort claims in this manner is sometimes referred to as a 'self-insurer,' this approach involves no insurance as the term is ordinarily used in regulatory statutes or in other legal contexts." R. Keeton & A. Widiss, Insurance Law: A Guide to Fundamental Principles, Legal Doctrines and Commercial Practices (1988) § 1.3 (c), pp. 13–14. " 'Self-insurance as a technique for treating risk has long been surrounded with confusion and controversy. . . . For those who believe that transfer of risk is a requisite for insurance, the term self-insurance is a misnomer since it permits no transfer.' " Id., p. 14 n.14, quoting H. Denenberg, R. Eilers, G. Hoffman, C. Kline, J. Melone & H. Snider, Risk and Insurance (1964) p. 79. Even the

pursuant to chapter 568 (the Workers' Compensation Act), suggests that the legislature intended self-insurers to be considered insurers. The association argues that because these amounts are paid either by an employer's workers' compensation insurer or by the employer itself as a self-insurer, the legislature intended that the workers' compensation system bear the loss rather than the association or an insured of an insolvent insurer. We do not agree that this argument, standing alone, provides a sufficiently clear indication that the legislature intended that self-insurers be considered insurers, such as would compel us to disregard the plain language of the statute, especially in light of the other persuasive reasons, discussed throughout this opinion, for concluding otherwise.

language of § 31-284 (b) supports this view of self-insurance. It provides that unless an employer can prove its solvency and financial ability "to pay [compensation] directly to injured employees," it must "insure [its] full liability" under the Workers' Compensation Act. General Statutes § 31-284 (b). Thus, the section distinguishes between insurance and an employer's retention of its own risk to pay compensation.

According to one scholar, "[a]ll insurance contracts concern risk transference, but not all contracts involving risk transference are insurance." R. Keeton & A. Widiss, supra, p. 12. In the appeal before us, Metropolitan did not purchase insurance to cover its risk. Rather, it complied with the Workers' Compensation Act by retaining its own risk. It did not thereby become transformed into an insurer. Rather, it retained its character as an employer that simply elected to pay the expenses associated with its employees' work-related accidents. Although this is commonly referred to as self-insuring,[16] there was no transfer of risk, which is generally considered to be an essential element of an insurance relationship. Therefore, the writings of insurance scholars, in addition to the plain language of § 38a-838 (6), support the definition of insurer as exclusive of self-insurers.

We now turn our attention to the relevant legislative history of the guaranty act, which, unfortunately, is devoid of any discussion of the definition of "insurer." As we declared in *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 452, "[t]he legislative history [of the guaranty act] confirms that the association was established for the benefit of consumers." We noted that "[a]t the public hearing held prior to passage of the bill proposing the creation of the association, Peter Kelly,

---

[16] At least one state has avoided the confusion surrounding the term self-insurer by labeling an employer that has retained its own workers' compensation risk an "own risk employer." See *Cities Service Gas Co.* v. *Witt*, 500 P.2d 288 (Okla. 1971).

a member of the state insurance department stated: '[T]his bill provides the means to avoid financial loss to Connecticut residents because of the insolvency of [insurance companies].' " Id., quoting Conn. Joint Standing Committee Hearings, Insurance and Real Estate, 1971 Sess., p. 55. We concluded that the purpose of the act is to protect policyholders and claimants. *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 452. The defendants point out that Metropolitan fits into neither category. On this issue, we find helpful the words of the Supreme Judicial Court of Massachusetts, interpreting that state's version of its guaranty act, which is similar to our own. In *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. 486, 490–91, 637 N.E.2d 209 (1994), the court stated that "[t]he obvious legislative purpose in establishing the [guaranty fund], which is funded by the insurance industry, is to benefit members of the public, individuals and entities . . . which are outside the insurance industry, from losses due to the insolvency of a member of that industry." Although Metropolitan is neither a policyholder nor a claimant, neither is it a member of the insurance industry. For purposes of the guaranty act, Metropolitan may be categorized more accurately as a resident company that has sustained losses due to the insolvency of a member of the insurance industry, rather than as a member itself of that industry.

Although the legislative history of the guaranty act does not contain any discussion of the definition of "insurer," there is ample evidence that the guaranty act was "substantially the same as a model bill adopted by the National Association of Insurance Commissioners [NAIC], which is an organization of the insurance commissioners of the fifty [s]tates." Conn. Joint Standing Committee Hearings, supra, p. 55, remarks of Peter Kelly; see also 14 S. Proc., Pt. 6, 1971 Sess., p. 2613, remarks of Senator Joseph Dinielli; 14 H.R. Proc., Pt.

8, 1971 Sess., p. 3624, remarks of Michael Colucci. We have recognized the propriety of examining the history of a model act upon which our own statutes or acts are based. See, e.g., *Conway* v. *Wilton*, supra, 238 Conn. 676. Such an idea applies a fortiori in a case, such as the present one, in which our own legislative history is silent on the precise issue in question. In the past, we have even turned to the model regulations of the NAIC, the same body that drafted the model act upon which our guaranty act was based, for that body's interpretation of one of its model acts. *Mead* v. *Burns*, 199 Conn. 651, 660, 509 A.2d 11 (1986) (discussing model insurance trade practices act that was basis for state's enactment of Connecticut Unfair Insurance Practices Act). Accordingly, in the absence of any evidence as to the legislature's intent with regard to the definition of "insurer," we believe it is appropriate to examine the NAIC's interpretation of "self-insurers" with regard to the states' guaranty acts.

In 1983, an NAIC study committee submitted a report to the NAIC concerning self-insured workers' compensation groups. 2 NAIC Proceedings (1983) p. 742. While such groups are not identical to an individual employer like Metropolitan, they do self-insure, as a group. We therefore find the report instructive.[17] The report states

---

[17] The NAIC report notes that there are differences between a self-insurer, which "retains and is responsible for its own workers' compensation risk," and a self-insured workers' compensation group, which is a "separate entity formed by many employers to assume their workers' compensation risks." 2 NAIC Proceedings, supra, p. 748. A reading of the NAIC report, however, leads us to the conclusion that the report's reasoning applies to a self-insurer with the same force as to a self-insured workers' compensation group.

We note that General Statutes § 38a-838 (6) excludes from the definition of a covered claim "any amount due any reinsurer, insurer, *insurance pool,* or underwriting association, as subrogation recoveries or otherwise . . . ." (Emphasis added.) We recognize that a self-insured workers' compensation group might be considered similar to an insurance pool, which is not defined in the General Statutes. Initially, however, we note that, as there is a distinction between a self-insurer and an insurer, it is reasonable to conclude that there is a similar difference between a self-insured insurance pool or group

in two different places that if a self-insured workers' compensation group's excess insurance carrier becomes insolvent, the group should be able to turn to the state's insurance guaranty association fund for protection. See 2 NAIC Proceedings, supra, p. 770 ("[i]f the excess insurance company is not able to deliver on its contractual promises, the insurance guaranty fund can be called upon if the excess company is a licensed company"); id., p. 783 ("[l]icensed excess insurance companies not only are subject to closer regulatory supervision than unlicensed companies, but also provide workers' compensation groups with the additional protection afforded by state insolvency funds"). Therefore, the NAIC report demonstrates the intent of the NAIC that self-insurers are not insurers for purposes of state guaranty acts. See also *Iowa Contractors Workers' Compensation Group* v. *Iowa Ins. Guaranty Assn.*, 437 N.W.2d 909, 916 (Iowa 1989) (stating that NAIC report "unequivocally noted the availability of insurance guaranty association fund protection if a [self-insured]

and an insurance pool. An "insurance pool" is the "[c]ombining together of several *insurers* to share premiums and losses so as to spread risks." (Emphasis added.) Black's Law Dictionary (6th Ed. 1990). According to the NAIC, a "workers' compensation group self-insurance pool" is a combining of "smaller employers" who "pool their risks . . . ." 2 NAIC Proceedings, supra, p. 742. Therefore, we believe that a self-insured workers' compensation group is more like a self-insurer than an insurer. While we need not decide the issue today, however, for purposes of this discussion, we will assume that although § 38a-838 (6) precludes an insurance pool from recovering from the association, it does not necessarily preclude a self-insured workers' compensation group or pool from recovering. Moreover, this notion derives support from case law from our sister state of Iowa, the only state to our knowledge to have considered the issue. Iowa's definition of a covered claim under its guaranty act is very similar to Connecticut's; see Iowa Code § 515B.2 (4) (1) (excluding from definition of "covered claim" any amount "due any reinsurer, insurer, insurance pool, underwriting association"); and its highest court considers a self-insured workers' compensation group to be legally capable of asserting a covered claim under the relevant section of its guaranty act analogous to § 38a-838 (6). See *Iowa Contractors Workers' Compensation Group* v. *Iowa Ins. Guaranty Assn.*, 437 N.W.2d 909, 917 (Iowa 1989).

group's excess carrier were to become insolvent"); *Stamp* v. *Dept. of Labor & Industries*, 122 Wash. 2d 536, 543, 859 P.2d 597 (1993) (stating that NAIC "has indicated that self-insurers should be able to recover from insurance guaranty funds").

In the final step of our interpretation of § 38a-838 (6), we consider the statute in question with regard to other relevant statutes, under the assumption that the legislature has enacted a consistent body of law. *Conway* v. *Wilton*, supra, 238 Conn. 664. Therefore, we consider it noteworthy that in other contexts, the legislature has chosen to define "insurer" so as to include self-insurers. See General Statutes § 38a-363 (b) (no-fault motor vehicle insurance). For example, in *Conzo* v. *Aetna Ins. Co.*, 243 Conn. 677, 686, 705 A.2d 1020 (1998), we held that a self-insured employer was required to provide uninsured motorist benefits to an employee who was injured while occupying an automobile during the course of his employment. In so doing, we concluded that the self-insured employer was an insurer within the meaning of § 38a-363, which defines terms used in our no-fault motor vehicle insurance statutes. Id., 683. Section 38a-363 (b) provides that the definition of insurer "includes a self-insurer and a person having the rights and obligations of an insurer . . . ." The fact that the legislature expressly defined "insurer" so as to include self-insurers in the no-fault motor vehicle insurance context but not in the workers' compensation context does not lead ineluctably to the conclusion that it intended to exclude self-insurers in the latter area. Although such a fact is certainly not dispositive in the present appeal, it is an additional factor militating in favor of excluding self-insurers from the definition of insurers for purposes of § 38a-838 (6). It is reasonable to assume that the legislature, having explicitly demonstrated its intention that the definition of "insurer" includes self-insurers for purposes of our no-fault motor

vehicle statutes, would have been equally clear with respect to the guaranty act if its intention had been the same.

B

The defendants rely on case law from other jurisdictions to support their contention that a self-insurer is an insurer under the guaranty act. Although only a handful of jurisdictions have considered the precise issue before us, the majority of those with guaranty acts similar to § 38a-836 et seq. hold that a self-insurer is not an insurer. See *Zinke-Smith, Inc.* v. *Florida Ins. Guaranty Assn., Inc.*, 304 So. 2d 507, 509–10 (Fla. App. 1974), cert. denied, 315 So. 2d 469 (Fla. 1975) (self-insuring employer not insurer such as would prevent its claim from qualifying as "covered claim" under Florida's guaranty act); *Iowa Contractors Workers' Compensation Group* v. *Iowa Ins. Guaranty Assn.*, supra, 437 N.W.2d 917 (self-insured workers' compensation group not insurer for purposes of Iowa's guaranty act); *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, supra, 418 Mass. 489 (self-insuring municipal employer not insurer within language or intent of Massachusetts' guaranty act); *In re Mission Ins. Co.*, 112 N.M. 433, 435, 816 P.2d 502 (1991) (stating that, for purposes of New Mexico's guaranty fund, self-insurer was not insurer); *Stamp* v. *Dept. of Labor & Industries*, supra, 122 Wash. 2d 543–44 (holding that self-insured employers not reinsurers, insurers, insurance pools or underwriting associations for purposes of Washington's guaranty act).

The courts of only two jurisdictions have held that a self-insurer is an insurer for purposes of their guaranty acts. The defendants urge us to follow them. The relevant cases are easily distinguishable, however, and we therefore find them unpersuasive. First, in *Ventulett* v. *Maine Ins. Guaranty Assn.*, 583 A.2d 1022 (Me. 1990), a Massachusetts resident was injured in a work-related

accident in Connecticut. His employer was self-insured up to $150,000. Id., 1023. The tortfeasors' liability insurance carrier had become insolvent. Id. In the portion of the opinion in which the court concluded that the self-insured employer was an insurer, the Supreme Judicial Court of Maine relied on the fact that Massachusetts' workers' compensation law defines a self-insuring employer as an "insurer." Id., 1024. The court stated that "[b]ecause the Massachusetts workers' compensation law defines a self-insured employer entitled to assert a subrogation claim as an 'insurer,' the Maine Guaranty Act likewise should treat a self-insured employer paying Massachusetts workers' compensation as an insurer that is barred from recovering on a subrogation claim against [the Maine Insurance Guaranty Association]." Id., 1025. Unlike Massachusetts, however, Connecticut does not, in its Workers' Compensation Act, define self-insured employers as insurers.

The defendants rely also on *Kachanis* v. *United States*, 844 F. Sup. 877, 889 (D.R.I. 1994), in which the United States District Court for the District of Rhode Island held that the United States, which self-insures its workers' compensation liabilities pursuant to the statutory scheme of the Federal Employees' Compensation Act; 5 U.S.C. § 801 et seq. (1988); was an insurer for purposes of the Rhode Island Insolvency Fund Act, that state's equivalent of Connecticut's guaranty act. Most of the *Kachanis* opinion is devoted to an analysis of federal preemption involving insurance law and application of the McCarran-Ferguson Act, 15 U.S.C. § 1012 (b) (1988), which limits federal preemption in the area of insurance. *Kachinis* v. *United States*, supra, 880. When it turned to the issues that are relevant to the facts of the appeal before this court, the *Kachanis* court first concluded that the Federal Employees' Compensation Act did not relate to the business of insurance. Id., 883. The court later recognized that an

argument that the United States is an insurer—even though the Federal Employees' Compensation Act does not relate to the business of insurance—is "blatantly contradictory"; id., 885; and "glaringly inconsistent." Id., 889. Nevertheless, the court held that the federal government was an insurer, deeming itself bound by precedent that "implicitly" ruled that the United States is an entity within the insurance business. Id. The court advanced no persuasive analysis of its own as to a self-insurer's status as an insurer and, moreover, relied on a Massachusetts case that is not dispositive of the issue.[18] Consequently, we are not persuaded by either the result or the reasoning of *Kachanis*.

We join, therefore, the majority of courts that have decided the status of self-insured employers under an insurance guaranty act, and we hold that self-insured employers are not insurers for purposes of Connecticut's guaranty act. The defendants have advanced no other persuasive reason for holding that Metropolitan's claim should not be considered a covered claim under § 38a-838 (6). Therefore, we conclude that Metropolitan's claim was a covered claim as defined in that subsection.

## II

The defendants' second claim is that even if we hold that Metropolitan is not an insurer under the guaranty

---

[18] In reaching its conclusion that the United States is an insurer, the *Kachanis* court relied heavily on *Ferrari* v. *Toto*, 9 Mass. App. 483, 402 N.E.2d 107 (1980), aff'd, 383 Mass. 36, 417 N.E.2d 427 (1981), an appellate court opinion that held that Massachusetts' guaranty fund "is excused from paying claims *if the ultimate beneficiary is an insurance company*." (Emphasis added.) Id., 486. In other words, *Ferrari* held that Massachusetts' guaranty act precludes all members of the insurance industry from recovery, not merely member insurers. Id., 486–87. It is noteworthy, however, that when the Supreme Judicial Court of Massachusetts considered the precise issue with which we are faced, months after *Kachanis* was decided, that court held that a self-insurer is *not* an insurer for purposes of the state's guaranty act. *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, supra, 418 Mass. 489.

act, any recovery obtained by Metropolitan from the defendants should be reduced by the limits of Doucette's uninsured motorist policy because Doucette failed to exhaust the policy limits, as required by General Statutes § 38a-845. We disagree.

Section 38a-845 (1) provides: "Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under [the guaranty act], shall exhaust first his rights under such policy. Any amount payable on a covered claim under [the guaranty act] shall be reduced by the amount of any recovery under the claimant's insurance policy or chapter 568." Because Doucette failed to exhaust the limits of his uninsured motorist policy with Shelby, he would be barred from recovering from the association. Pursuant to § 31-293,[19] Metropolitan intervened as a plaintiff in Doucette's action against Pomes and Jensen. The defendants argue that Metropolitan's claim for reimbursement is essentially Doucette's claim, with Metropolitan merely substituted as plaintiff after it intervened and Doucette withdrew his complaint. The defendants characterize Metropolitan's claim as a subrogation claim. Pomes and Jensen, who state repeatedly that Metropolitan is "standing in Doucette's shoes," contend that Metropolitan "is asserting Doucette's claim against [them] for causing Doucette's injuries," and that Metropolitan's "rights derive from and are no greater than Doucette's." According to the defendants, Metropolitan, standing in Doucette's shoes, cannot recover what Doucette himself would not be able to recover. Whether the defendants are correct that, under § 38a-845, Doucette's failure to exhaust his policy limits bars Metropolitan from recovering, turns on the proper interpretation of § 31-293 (a). We conclude that although the defendants are correct that Metropolitan's rights are derivative of

[19] See footnote 4 of this opinion.

Doucette's; see, e.g., *Olszewski* v. *State Employees' Retirement Commission,* 144 Conn. 322, 325, 130 A.2d 801 (1957); the defendants misapprehend the nature of a claim brought by an employer pursuant to § 31-293 when they characterize Metropolitan's claim as Doucette's claim.

In addition to allowing an employee to bring a claim against a tortfeasor, § 31-293 (a) allows an employer that has paid or become obligated to pay compensation to the injured employee under the Workers' Compensation Act "to take action against a 'third person' who is legally liable to pay 'damages' for an injury to an employee." *Dodd* v. *Middlesex Mutual Assurance Co.,* 242 Conn. 375, 380, 698 A.2d 859 (1997). We have stated that the employer's right of action under § 31-293 is separate and distinct from the employee's right, noting that "it is a right vested in the employer exclusively; it is not the right of the employee." *Robinson* v. *Faulkner,* 163 Conn. 365, 377–78, 306 A.2d 857 (1972). Additionally, the statute provides that: "No compromise with the [tortfeasor] by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. . . ." General Statutes § 31-293 (a). Such language makes clear that the employer and employee have separate rights under the statute. Moreover, we have noted that the statute "also provides that, if either the employer or the employee fails to join in an action instituted by the other against a tort feasor within thirty days after notification by that other, his cause of action is barred. These provisions clearly indicate that under the statute the employer and the employee each has a right of action which is separate from that of the other." *Stavola* v. *Palmer,* 136 Conn. 670, 678, 73 A.2d 831 (1950).

The legislative history of the Workers' Compensation Act provides additional support for this interpretation. In *Dodd* v. *Middlesex Mutual Assurance Co.,* supra,

242 Conn. 381–82, we examined the relevant legislative history, noting that "[c]hapter 138, part B, § 6, of the 1913 Public Acts provided in relevant part: 'When any injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto . . . any employer having paid the compensation shall be subrogated to the rights of the injured employee to recover against that person . . . .' That provision was subsequently amended, removing the reference to subrogation and substituting language allowing an employer either to intervene in an action brought by an employee *or to bring its own direct action against a third party.* See Public Acts 1917, c. 368, § 1. The language of the 1917 act is virtually identical to that of the current § 31-293 (a) . . . ." (Emphasis added.) This legislative history, in addition to the plain language of the statute, makes clear that, under § 31-293 (a), an employer has a cause of action that is separate and distinct from that of its injured employee. Metropolitan's cause of action, therefore, although derivative of Doucette's, belongs exclusively to Metropolitan, and Metropolitan has an independent statutory right to assert a claim for reimbursement.

We return now to the defendants' argument that § 38a-845 bars Metropolitan from recovering because Doucette failed to exhaust his policy limits. With respect to the prerequisite of exhaustion, § 38a-845 (1) provides: "Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer, which is also a covered claim under [the guaranty act], shall exhaust first his rights under such policy. . . ." Metropolitan does not have, however, "a claim against an insurer under any provision in an insurance policy . . . ." Rather, its claim is against a negligent driver and the owner of the

vehicle negligently driven. It has no insurance policy to which it can turn for recovery. There are no limits for it to exhaust. It has no claim under Doucette's uninsured motorist policy, which is a contractual remedy available to Doucette. As we recently concluded in *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 377, an employer has no right to recover from any amounts an employee may receive from his or her uninsured motorist coverage. Therefore, § 38a-845, which would have applied with full force to Doucette, is simply inapplicable to Metropolitan, under the plain language of the statute.[20]

---

[20] Pomes and Jensen argue that because Metropolitan's claim is derivative of Doucette's claim, Metropolitan's rights are no greater than Doucette's. Therefore, according to these defendants, any defense available to the defendants against Doucette may also be used against Metropolitan. For support, Pomes and Jensen cite *Packtor* v. *Seppala & AHO Construction Co.*, 33 Conn. App. 422, 431, 636 A.2d 383, appeal dismissed, 231 Conn. 367, 650 A.2d 534 (1994), in which the Appellate Court denied an employer's right of action in a case in which the employee's right of action was barred by the statute of limitations, stating that "it would be illogical to grant greater rights to an employer whose rights are derivative, than to the employee from whom those derivative rights flow." Pomes and Jensen fail to recognize, however, that the Appellate Court did not bar the employer's action based on any failure on the employee's part. Indeed, the court stated: "We agree with [the employer] that it would be inequitable to bar an intervention action by an employer *for no other reason* than that the *employee* failed to file his or her action within the applicable period of limitation. . . . The action is not barred, however, by the employee's procedural failure but by the failure of the employer to bring suit in a timely manner." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 430–31. Likewise, in the present appeal, it would be inequitable to penalize Metropolitan for Doucette's failure to exhaust the limits of his insurance policy. Metropolitan had no control over Doucette's actions. It could not compel Doucette to exhaust the limits of his policy. For these reasons, the argument of Pomes and Jensen fails.

In an effort to support their argument, Pomes and Jensen also cite a case from the United States District Court for the District of Connecticut, *Harbor Ins. Co.* v. *Connecticut Ins. Guaranty Assn.*, 711 F. Sup. 70, 72 (D. Conn. 1989), in which the court held that a claimant's failure to exhaust his rights under available coverage under an uninsured motorist policy prevented any subsequent recovery against the association by the claimant *or the excess insurance carrier*. Although the fact that the plaintiff in *Harbor Ins. Co.*

## III

The defendants' remaining arguments also rely on the applicability of § 38a-845 to Metropolitan's claim. Specifically, in addition to their exhaustion argument, the defendants claim that § 38a-845 requires that Metropolitan's claim be reduced by the total amount of Doucette's recovery under the Workers' Compensation Act.[21] The association argues further that the statute requires that Metropolitan's claim be reduced by the amount of uninsured motorist benefits received by Doucette from his insurance company.[22] For the reasons set forth in part II of this opinion, § 38a-845 simply does not apply to Metropolitan's claim, and, therefore, the defendants' arguments fail.

was an insurer would preclude recovery under our holding on the first issue of the present appeal, the *Harbor Ins. Co.* court assumed that the insurer's claim was a "covered claim" because it deemed the exhaustion argument to be dispositive. Id. Therefore, the court addressed the exhaustion argument, deciding against the insurer because neither the employee nor the insurer had pursued the insured's rights under the relevant uninsured motorist policy. Id. Much of the court's holding relies on the fact that the plaintiff excess insurer had settled with the insured. It was this settlement that precluded the plaintiff's recovery. The plaintiff's counsel conceded that it had "sought a prompt settlement . . . to avoid substantially greater exposure . . . ." Id., 74. The court in *Harbor Ins. Co.* noted that the plaintiff had "admittedly benefited from the decision not to proceed against [the uninsured motorist insurance carrier] nor to add this party to the settlement negotiations." Id. The court noted that "[h]ad it not been for the settlement with [the plaintiff], [the insured] would have been able to raise a claim against the [a]ssociation subject to the exhaustion of her rights under the [relevant insurance] policy." Id. In the present appeal, Metropolitan did not settle with Doucette. Doucette settled with Shelby, its uninsured motorist insurance carrier. Metropolitan's actions did not trigger the preclusive effect of § 38a-845, as did those of the plaintiff in *Harbor Ins. Co.* Therefore, Pomes' and Jensen's reliance on *Harbor Ins. Co.* is misplaced.

[21] The defendants rely on the language of § 38a-845 (1), which provides in part: "Any amount payable on a covered claim under [the guaranty act] *shall be reduced by the amount of any recovery under* the claimant's insurance policy or *chapter 568.*" (Emphasis added.)

[22] Again, the association relies on the language of § 38a-845 (1) that provides that any amount payable on a covered claim shall be reduced by any "recovery *under the claimant's insurance policy* . . . ." (Emphasis added.)

## IV

Finally, Pomes and Jensen assert an additional reason, separate and distinct from § 38a-845, to reduce any recovery obtained by Metropolitan.[23] These defendants assert that because Metropolitan paid compensation to Doucette without first applying for a statutory lien or an offset for the amounts that Shelby had paid to Doucette, Metropolitan cannot obtain reimbursement from the defendants. This argument is unpersuasive.

In support of their argument, Pomes and Jensen cite *Pokorny* v. *Getta's Garage*, 219 Conn. 439, 594 A.2d 446 (1991), in which this court held that an employer is not required to pay workers' compensation benefits in a case in which an employee obtained recovery from another insurer and the other insurer did not assert a lien or offset pursuant to General Statutes (Rev. to 1989) § 38-174n, now § 38a-470. Pomes and Jensen claim that, in the present appeal, "as in *Pokorny*, [Metropolitan] was not required to pay workers' compensation benefits to Doucette where Doucette obtained recovery from Shelby and where Shelby apparently never asserted a statutory lien or offset against Doucette's recovery of workers' compensation benefits." Any reliance on *Pokorny* is misplaced, however, because that case is simply inapposite.

In *Pokorny*, we held that an employer was not required to pay its injured employee the value of the employee's medical expenses that had been paid previously by the employee's medical insurance carrier, which had not filed a lien pursuant to statute. Id., 440. It does not follow from this holding, however, that, in the present appeal, Metropolitan was required to apply an offset for Shelby's payment to Doucette. *Pokorny* "involve[d] only the rights and obligations between the [injured employee], on the one hand, and [the defendant

---

[23] The association did not advance this claim.

employer and its workers' compensation insurer], on the other. It [did] not involve the rights and obligations, if any, between the medical insurance carrier . . . and [the defendants] . . . ." Id., 441–42 n.2. Similarly, the present appeal involves the rights and obligations between Metropolitan, a party that suffered a loss, and the defendant tortfeasors. It does not involve the rights and obligations between Doucette and his employer. Moreover, in *Pokorny*, the plaintiff sought to recover twice for his medical expenses, once from the defendant employer's medical insurance carrier and once from the employer. Whether Doucette has received a multiple recovery, however, is not at issue here.[24] In the present appeal, Metropolitan, which paid compensation to Doucette, seeks to recover for that payment. It does not seek a double recovery. Metropolitan was obligated under our workers' compensation laws to provide compensation to Doucette. It met this obligation and later asserted its statutory right to seek reimbursement. It does not make sound policy to compel an employer, prior to paying benefits to an employee, to determine its rights and obligations in light of other potential sources of recovery by the employee. In *Pokorny*, we noted that the Workers' Compensation Act "compromise[s] an employee's right to a common law tort action for work related injuries in return for *relatively quick and certain compensation*." (Emphasis added; internal quotation marks omitted.) Id., 454; *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 381. Holding as Pomes and Jensen request would defeat that purpose of the Workers' Compensation Act. Therefore, we find no support in *Pokorny* for the argument

---

[21] If Pomes and Jensen are concerned about double recovery, we note that "§ 38a-334-6 of the Regulations of Connecticut State Agencies allows an insurer to insert a provision in its contract with the insured mandating a setoff equal to any amounts paid to the insured by way of workers' compensation, thereby preventing double recovery by the employee." *Dodd* v. *Middlesex Mutual Assurance Co.*, supra, 242 Conn. 387.

by Pomes and Jensen and, consequently, we are left unpersuaded.

V

In conclusion, we hold that a self-insured employer is not an insurer for purposes of the guaranty act and, therefore, is not precluded from asserting an otherwise valid claim under § 38a-838 (6). Additionally, we hold that because an employer's right to assert a claim pursuant to § 31-293 (a) is separate and distinct from its employee's right, § 38a-845 is inapplicable to Metropolitan in the present appeal and Metropolitan need not satisfy the exhaustion prerequisite of § 38a-845, nor that statute's requirement that amounts payable on covered claims be reduced by any recovery under a claimant's insurance policy or the Workers' Compensation Act.

The judgment is affirmed.

In this opinion the other justices concurred.